1  Derek A. Newman, State Bar No. 190467
2  *derek@newmanlaw.com*
   NEWMAN DU WORS LLP
3  100 Wilshire Boulevard, Suite 940
   Santa Monica, CA 90401
4  Telephone:  (310) 359-8200
   Facsimile:   (310) 359-8190
5
6  Attorneys for Defendants
   Andee Hill, Ryan Bogue,
7  Donald Hendrickson, and
   Escrow Hill Limited
8

9              UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
10                 SOUTHERN DIVISION

11  EC SERVICES                  No.:   **SACV14-00243 RNB**
12  CORPORATION, a California
    corporation doing business as   **NOTICE OF REMOVAL UNDER**
13  Escrow.com,                    **28 U.S.C. § 1441(a)**

14          Plaintiff,

15      v.

16
    ANDREA HILL, an individual
17  aka ANDEE HILL;
    RYAN BOGUE, an individual;
18  DONALD HENDRICKSON, an
    individual;
19  ESCROW HILL;
    ESCROWHILL.COM;
20  ESCROW HILL, LIMITED;
    ADMINISTRATIVE
21  SERVICES, LLC, a Nevada
    limited liability company;
22  GREGG MCNAIR, an
    individual; and
23  DOES 1–100
24
25          Defendants.

26

27

28
                              i
                    NOTICE OF REMOVAL

**To:**　　　　**United States District Court for the Central District of California**

**And to:**　　　**Superior Court of the State of California, County of Orange**

**And to:**　　　**Plaintiff EC Services Corporation and its counsel of record**

PLEASE TAKE NOTICE THAT, under 28 U.S.C. §§ 1331, 1441, and 1446, Defendants ANDREA HILL, an individual aka ANDEE HILL; RYAN BOGUE, an individual; DONALD HENDRICKSON, an individual; and ESCROW HILL LIMITED, (the "Removing Defendants") hereby remove the above-captioned action filed in the Superior Court of the State of California, County of Orange, as *EC Services Corporation v. Hill, et al.*, No. 30-2014-00700051-CU-BT-CJC (the "Action"). A copy of process, pleadings, and orders served on the Removing Defendants are attached as **Exhibit A**.

The Action is removable to this Court under 28 U.S.C. § 1441(a), because: (i) the district court has original jurisdiction under 28 U.S.C. § 1331 over Plaintiff EC Services Corporation's federal claims for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and 1964(c); and (ii) the Central District of California, Southern Division, is the federal district court embracing the Superior Court of the State of California, County of Orange, where the Action is pending.

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's other claims in the Action because they are so related to Plaintiff's federal claims over which this Court has original jurisdiction that they form part of the same case or controversy.

All properly joined and served defendants join in and consent to the removal of this action under 28 U.S.C. § 1446(b)(2)(A).

Plaintiff filed proofs of service in the state-court action purporting to have also served process on Defendants ESCROW HILL, ESCROWHILL.COM, and ADMINISTRATIVE SERVICES, LLC, a Nevada limited liability company. But those defendants have not been properly joined and served. According to Plaintiff's

1

proofs of service filed in state court, service on each of those defendants was made on Hill as the "authorized agent for service of process." But ESCROW HILL and ESCROWHILL.COM are not business entities and Hill is not an authorized agent for service of process for either of them. Nor is Hill an authorized agent for service of process for ADMINISTRATIVE SERVICES, LLC, a Nevada limited liability company. A copy of the Nevada Secretary of State's entity details website for that entity is attached as **Exhibit B**. Hill is not listed as an officer or as an authorized agent for service of process. Accordingly, these three defendants are not required to join in this Notice of Removal.

This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1). Defendants Hill and Escrow Hill Limited received a copy of the Complaint on January 25, 2014. Defendant Bogue received a copy of the Complaint on January 26, 2014. Defendant Hendrickson received a copy of the Complaint on January 28, 2014. Therefore, the Removing Defendants received a copy of the complaint less than 30 days prior to the filing of this Notice of Removal.

As required by 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, the Removing Defendants will give written notice to Plaintiff and will file a copy of the Notice of Removal with the clerk of the Superior Court of the State of California, County of Orange.

Dated: February 19, 2014.          Respectfully Submitted,

**NEWMAN DU WORS LLP**

By: _____
Derek A. Newman, State Bar No. 190467
*derek@newmanlaw.com*

Attorneys for Defendants
Andee Hill, Ryan Bogue, Donald
Hendrickson, and Escrow Hill Limited

2
NOTICE OF REMOVAL

# Exhibit A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** <br> *(AVISO AL DEMANDADO):* <br><br> ANDREA HILL, an individual aka ANDEE HILL; (See SUM-200(A) attachment for additional defendants) <br><br> **YOU ARE BEING SUED BY PLAINTIFF:** <br> *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* <br><br> EC SERVICES CORPORATION, a California corporation doing business as Escrow.com | *FOR COURT USE ONLY* <br> *(SOLO PARA USO DE LA CORTE)* <br><br> **ELECTRONICALLY FILED** <br> Superior Court of California, <br> County of Orange <br><br> **01/22/2014** at 08:14:14 AM <br> Clerk of the Superior Court <br> By Diana Cuevas, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es:)*  Superior Court of California <br><br> 700 Civic Center Drive West <br> Santa Ana, California 92701 | **CASE NUMBER:** <br> *(Número)* <br> 30-2014-00700051-CU-BT-CJC <br><br> Judge Derek W. Hunt |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es:)*
Robert A. Bonito, Esq.; P.O. Box 750 Orange, CA 92856; 714-997-2221

Diana Cuevas

| | | |
|---|---|---|
| DATE: January 22, 2014 <br> *(Fecha)* | ALAN CARLSON, Clerk of the Court | , Deputy <br> *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> www.courtinfo.ca.gov |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| EC SERVICES CORPORATION v. HILL | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

RYAN BOGUE, an individual; DONALD HENDRICKSON, an individual; ESCROW HILL; ESCROWHILL.COM; ESCROW HILL LIMITED; ADMINISTRATIVE SERVICES, LLC, a Nevada limited liability company; GREGG MCNAIR, an individual; and DOES 1-100,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ROBERT A. BONITO & ASSOCIATES
ROBERT A. BONITO, ESQ. SBN 113341
P.O. BOX 750
ORANGE, CA 92856
TELEPHONE NO.: 714-997-2221      FAX NO.:
ATTORNEY FOR (Name): EC Services Corporation

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/22/2014** at 08:14:14 AM

Clerk of the Superior Court
By Diana Cuevas, Deputy Clerk

CASE NAME:
EC SERVICES CORPORATION v. HILL, et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter    [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 30-2014-00700051-CU-BT-CJC |
| | | | JUDGE: | Judge Derek W. Hunt |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [✓] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve      e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence      f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): 14
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 22, 2014

Robert A. Bonito
_____ ▶ _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) (*if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability (*not asbestos or
toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) (*not civil
harassment*) (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
(*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract (*not unlawful detainer
or wrongful eviction*)
Contract/Warranty Breach–Seller
Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage (*not provisionally
complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent
domain, landlord/tenant, or
foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
(*arising from provisionally complex
case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment (*non-
domestic relations*)
Sister State Judgment
Administrative Agency Award
(*not unpaid taxes*)
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-
harassment*)
Mechanics Lien
Other Commercial Complaint
Case (*non-tort/non-complex*)
Other Civil Complaint
(*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition (*not specified
above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

ROBERT A. BONITO & ASSOCIATES
ROBERT A. BONITO, ESQ. SBN 113341
P.O. Box 750
Orange, CA 92856-6750
Telephone: (714) 997-2221

Attorneys for Plaintiff EC Services Corporation

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/22/2014** at 08:14:14 AM
Clerk of the Superior Court
By Diana Cuevas,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

EC SERVICES CORPORATION, a California
corporation doing business as Escrow.com;

      Plaintiff,

vs.

ANDREA HILL, an individual aka ANDEE
HILL; RYAN BOGUE, an individual;
DONALD HENDRICKSON, an individual;
ESCROW HILL; ESCROWHILL.COM;
ESCROW HILL, LIMITED;
ADMINISTRATIVE SERVICES, LLC, a Nevada
limited liability company;  GREGG MCNAIR,
an individual; and DOES 1-100,
      Defendants.

CASE NO.:   30-2014-00700051-CU-BT-CJC

Assigned to:   Judge Derek W. Hunt

**COMPLAINT FOR:**

1. **BREACH OF CONTRACT;**
2. **BREACH OF CONTRACT;**
3. **BREACH OF CONTRACT;**
4. **BREACH OF FIDUCIARY DUTY;**
5. **CONVERSION;**
6. **FRAUD;**
7. **FRAUD BY NON-DISCLOSUERE**
8. **CONSTRUCTIVE FRAUD;**
9. **CONSPIRACY;**
10. **UNFAIR BUSINESS PRACTICES;**
11. **INTEREFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;**
12. **INTEREFERENCE WITH BUSINESS RELATIONSHIP;**
13. **CIVIL RICO;**
14. **ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION**

Complaint Filed :   January 22, 2014
Trial Date:   NOT YET ASSIGNED

UNLIMITED CIVIL CASE

1

COMPLAINT

Plaintiff, EC Services Corporation alleges causes of action against Defendants, and each of them, as follows:

1.   Plaintiff, EC Services Corporation, doing business as Escrow.com ("ESCROW.COM" or "Plaintiff"), is and at all times herein mentioned was, a California corporation authorized to and doing business in the State of California, County of Orange.

2.   Defendant, Andrea Hill aka Andee Hill ("HILL") is an individual, and at all times relevant, was a resident of the County of Orange, State of California and did and is doing business in the County of Orange, State of California.

3.   ESCROW.COM is informed and believes that Defendant Ryan Bogue ("BOGUE") is an individual and, at all times herein relevant, was a resident of the County of Orange, State of California and did and is doing business in the County of Orange, State of California.

4.   ESCROW.COM is informed and believes that Defendant Donald Hendrickson ("HENDRICKSON") is an individual and, at all times herein relevant, was a resident of the County of Orange, State of California and did and is doing business in the County of Orange, State of California.

5.   ESCROW.COM is informed and believes that Defendant Gregg McNair ("MCNAIR") is an individual and, at all times herein relevant, was a citizen of Australia, a permanent resident of Panama and through companies he manages, owns and controls, is doing business in the County of Orange, State of California.

6.   ESCROW.COM is informed and believes that Defendant Escrow Hill ("ESCROW HILL") is a business organization doing business in and from the State of California, County of Orange (without authorization from the California Secretary of State) whose business entity status is presently unknown ESCROW HILL and is owned, controlled and/or managed by defendants HILL, BOGUE, HENDRICKSON and MCNAIR. Plaintiff will seek leave of court to amend this complaint and identify the true entity status of ESCROW HILL when the same is ascertained.

7.   ESCROW.COM is informed and believes that Defendant EscrowHill.com ("ESCROW HILL.COM") is a business organization doing business in and from the State of California, County

COMPLAINT

of Orange (without authorization from the California Secretary of State) whose business entity status

is presently unknown ESCROWHILL..COM and is owned, controlled and/or managed by defendants

HILL, BOGUE, HENDRICKSON and MCNAIR. Plaintiff will seek leave of court to amend this

complaint and identify the true entity status of ESCROW HILL when the same is ascertained.

8.    ESCROW.COM is informed and believes that Defendant Escrow Hill, Limited ("HILL

LTD") is a foreign business entity formed in the country of New Zealand and doing business in and

from the State of California, County of Orange (without authorization from the California Secretary

of State) through the actions of its employees and agents HILL, BOGUE, HENDRICKSON and

MCNAIR and Does 1 through 5.

9.    ESCROW.COM is informed and believes that Defendant Administrative Services, LLC

("HILL ADMIN") is a Nevada limited liability company doing business in and from the State of

California, County of Orange (without authorization from the California Secretary of State) through

the actions of its employees and agents HILL, BOGUE, HENDRICKSON, MCNAIR and Does 1

through 5.

10. ESCROW.COM is informed and believes that Defendants HILL, BOGUE,

HENDRICKSON, MCNAIR and DOES 1-25 through separate acts, omissions and conduct of each

of the defendants as set forth herein, were done intentionally and pursuant to a common plan and

design to injure Plaintiff. As a result of this civil conspiracy, each of the defendants should be held

individually liable and responsible for the entirety of Plaintiff's damages.

11. The true names and capacities of those Defendants sued herein as DOES 1 through 100,

inclusive, are unknown to ESCROW.COM at this time, who therefore sues said Defendants by such

fictitious names. ESCROW.COM will amend this Complaint to show the true names and capacities

of those Defendants when the same have been ascertained.

12. ESCROW.COM is informed and believes and based thereon thereon alleges, that each

of those Defendants sued herein as DOES 1 through 100, inclusive, is a person or entity which

3                                                          COMPLAINT

actively participated in some manner presently unknown in the acts, omissions and conduct giving rise to ESCROW.COM's claims as hereinafter alleged.

13.  The contracts, services and/or obligations upon which this complaint is based were to be performed substantially within this judicial district but affect interstate commerce.

14.  ESCROW.COM is informed and believes and based thereon alleges, that at all times herein mentioned each of the Defendants was the agent and employee of each of the remaining Defendants and in doing the things hereinafter alleged was acting within the scope and authority of such agency.  ESCROW.COM further alleges that the individual Defendants and the Defendant managing agents of the corporate, partnership and limited liability Defendants ratified and approved the acts of their agents.

15.  ESCROW.COM is informed and believes and based thereon alleges, that at all times herein mentioned, each of Defendants HILL, BOGUE, HENDRICKSON, and MCNAIR and DOES 1 through 25 were and remain the alter-ego of ESCROW HILL, ESCROWHILL.COM, HILL LTD, HILL ADMIN and DOES 26 through 50 and that HILL, BOGUE, HENDRICKSON, and MCNAIR and DOES 1 through 25 did and still do dominate, influence and control ESCROW HILL, ESCROWHILL.COM, HILL LTD, HILL ADMIN and DOES 26 through 50 and each of them; that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity as a corporation, LLC or other legal entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which Defendants used and still use to conduct their business affairs; that an injustice and fraud upon ESCROW.COM and the public will result if the theoretical separateness of the Defendants is not disregarded and HILL BOGUE, HENDRICKSON, and MCNAIR and DOES 1 through 25 and ESCROW HILL ,ESCROWHILL.COM , HILL LTD, HILL ADMIN and Does 26 through 50 and each such Defendant is held liable for all relief being sought herein.

///

COMPLAINT

16. ESCROW.COM was the first company to create online escrow approximately 15 years ago. ESCROW.COM engages in business as an escrow agent by means of a corporation duly organized for that purpose and specifically licensed in the State of California for that purpose. ESCROW.COM is headquartered and operates its internet escrow services from its offices in Rancho Santa Margarita, California. ESCROW.COM through its operating subsidiary provides online escrow services that facilitate and accelerate e-commerce by assuring a secure settlement. ESCROW.COM, founded in 1999 by Fidelity National Financial, pioneered the process of online escrow services and has established itself as the leading provider of secure business and consumer transaction management on the internet. All escrow services offered on ESCROW.COM's website are provided independently and exclusively by ESCROW.COM's subsidiary, Internet Escrow Services, a California corporation ("IES"). IES is fully licensed and accredited as an escrow company and is subject to compliance with all applicable escrow regulations, including the California Financial and Business Codes and the California Code of Regulations. ESCROW.COM is a recommended transaction settlement service by the leaders in the e-commerce industry. To date, ESCROW.COM has succeeding in closing approximately $2 billion dollars in settled transactions.

17. ESCROW.COM has spent more than 15 years of time and millions of dollars developing its reputation, goodwill and customer base. In the worldwide internet business, customer access is essential for continued business and customer information in the escrow transactions contain private and confidential information. Customer identification is unique and is acquired at great cost.

18. There is a great risk in passing money and property through internet transactions. The State of California has set forth laws which protect the individuals and businesses that invest money and property and place risk in such transactions and regulates and oversees "money transmitters" and "internet escrow companies" who operate or whose employees or agents operate such businesses within the State of California and other states as well.

19. Pursuant to California Escrow Law: "It shall be *unlawful* for any person to engage in

COMPLAINT

20.   business as an escrow agent within this state except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." Finance Code § 17200.   "Person" means, in addition to the singular, persons, group of persons, co-operative, association, company, firm, partnership, corporation, limited liability company, or other legal entity (Finance Code § 17002.5);   "Internet escrow agent" means any person engaged in the business of receiving escrows for deposit or delivery over the Internet (Finance Code § 17004);   "Joint control agent" means a person engaging in the business of receiving money or other property for disbursal or use in payment of the cost of labor, materials, services, permits, fees, or other items of expense incurred in the construction of improvements upon real property. As used in this section, "in the business" means the conduct of the aforesaid transaction either for compensation or without compensation as a primary business or as an incidence to another business (Finance Code § 17005.1); "Person subject to this division" means any person undertaking the performance of escrow agent services. Unless specifically exempted, as in Section 17006, however, this definition shall not be used to exclude anyone. (Finance Code § 17005.4); Within this state" means any activity of a person relating to receiving escrows for deposit or delivery that originates from this state and is directed to persons outside this state, or that originates from outside this state and is directed to persons inside this state, or that originates inside this state and is directed to persons inside this state, or that leads to the formation of a contract and the offer or acceptance thereof is directed to a person in this state, whether from inside or outside this state and whether the offer was made inside or outside this state. (Finance Code § 17005.5).

21.   The license application standards have strict requirements including but not limited to having a person with knowledge and experience of accounting and Escrow Law and regulations on duty at each business location of the licensed internet escrow agent (Finance Code § 17200.8); bond requirements (Finance Code § 17202); and background and fingerprint identification (Finance Code § 17209);

COMPLAINT

22. Any person who willfully violates the Escrow Law licensing provisions or who willfully violates the rules so identified is subject to criminal sanctions up to and including fine and imprisonment (Finance Code § 17700).

23. Pursuant to California's Money Transmission Act at Finance Code § 2002: "**(j)** '*In California*' *or* '*in this state*' *means physically located in California, or with, to, or from persons located in California*" and **(s)** 'Receiving money for transmission' or '*money received for transmission*' *means receiving money or monetary value in the United States for transmission within or outside the United States by electronic or other means*" Finance Code§ 2030 requires a license to perform this activity: "**License required**: **(a)** *A person shall not engage in the business of money transmission in this state, or advertise, solicit, or hold itself out as providing money transmission in this state, unless the person is licensed or exempt from licensure* under this division or is an agent of a person licensed or exempt from licensure under this division. **(b)** A license under this division is not transferable or assignable (italics added).

24. Defendants, and each of them, are participating in an agreed upon business activity to perform internet escrow services and money transmission services from within the state of California for compensation, as a primary business or as an incidence to another business and make a profit therefrom without an escrow license or a money transmission license. Defendants, and each of them, through the commission of the acts as alleged herein, participated in activity which constitute a pattern of racketeering activity, Defendants, and each of them directly or indirectly participate in the conduct of an enterprise as alleged herein, the activities of which affect interstate or foreign commerce, and Plaintiff was injured in its business or property by reason of such conduct.

25. ESCROW.COM is a government licensed, audited and secured third party that safely holds a buyer's payment in trust until the sale is complete. Government agencies perform regular audits of independently licensed escrow companies. The audit examinations serve to protect public funds, determine safety and soundness of operations and determine compliance with escrow statutes

COMPLAINT

26. and regulations. Internet Escrow Services at ESCROW.COM, located in the state of California, is audited regularly by the California Department of Business Oversight as well as regulatory agencies from other states.

27. The California escrow law is contained in Division 6 (commencing with Section 17000) of the **California Financial Code**. The regulations are contained in Subchapter 9, Title 10, **California Code of Regulations** commencing with Section 1700 (10 C.C.R. § 1700, et seq.). The escrow law protects members of the public who entrust their money or other assets to independent escrow agents in California. Escrow agents, joint control agents and internet escrow agents are subject to the provisions of the escrow law.

28. ESCROW.COM (including its subsidiaries and affiliates) expresses on its website that it retains full copyright ownership, rights and protection in all material contained on the website (including all software, HTML code and other code, or business methods). Except as expressly authorized, ESCROW.COM prohibits any person from taking any action to copy, distribute, transmit, display, perform, reproduce, publish, license, rewrite, create derivative works from, transfer, or sell any material contained on the website without the prior consent of ESCROW.COM. It is expressly stated that none of the material contained on the website may be reverse-engineered, disassembled, decompiled, transcribed, stored in a retrieval system, translated into any language or computer language, retransmitted in any form or by any means (electronic, mechanical, photo reproduction, recordation or otherwise), resold or redistributed without the prior written consent of ESCROW.COM.

29. On July 17, 2000 HILL executed an Employee Proprietary Information Agreement ("EPIA"), which was witnessed by the then General Counsel of EC Services Corporation. A true and correct copy of the EPIA is attached hereto and incorporated herein as Exhibit A.

30. Pursuant to the EPIA, and as a condition to her employment and continued employment, Ms. Hill agreed to abide by various terms and conditions including, but not limited to, matters pertaining to confidentiality, non-solicitation, non-disclosure, non-competition, conflicting employment, and assignment and business records.

COMPLAINT

31. By the year 2013 HILL was still employed and promoted to the position of Director of Business Development. In this position HILL had access to all of ESCROW.COM's customer lists, records, materials, equipment, drawings, documents and data pertaining to the process, business model, invention, trade secret and confidential information.

32. BOGUE was originally employed by ESCROW.COM. from November 2002 until May 2006. BOGUE was re-hired in May 2008 at which time he executed a proprietary agreement titled Assignment of Inventions and Patents ("AIP"). A true and correct copy of the AIP he signed is attached hereto and incorporated herein as Exhibit B. In the AIP BOGUE acknowledged, in writing, "Proprietary Information", whether tangible or intangible, whether disclosed to, learned or developed by BOGUE during his employment existed at ESCROW.COM including but not limited to software, data, database, trade secret, know-how, knowledge, technique, process, financial information, customer information, pricing information and contract terms and that all of the same was property that belonged solely to ESCROW.COM. In November 2013 BOGUE's position was Customer Service Manager.

33. HENDRICKSON was employed by ESCROW.COM in January 2010 at which time he executed a proprietary agreement titled Assignment of Inventions and Patents ("AIP"). A true and correct copy of the AIP he signed is attached hereto and incorporated herein as Exhibit C. In the AIP HENDRICKSON acknowledged, in writing, "Proprietary Information", whether tangible or intangible, whether disclosed to, learned or developed by HENDRICKSON during his employment existed at ESCROW.COM including but not limited to software, data, database, trade secret, know-how, knowledge, technique, process, financial information, customer information, pricing information and contract terms and that all of the same was property that belonged solely to ESCROW.COM.

34. BOGUE and HENDRICKSON each also acknowledged in writing the ESCROW.COM Employee Handbook. The Handbook provided general guidelines and descriptions of ESCROW.COM and the understanding of the employment guidelines. The Handbook set forth General Standards of Conduct which again set forth the importance of confidential business

COMPLAINT

information, performing work of a personal nature during company time, solicitation of another employee while either party is working, the importance that confidential information including but not limited to company finances, pricing, products, new product development, software, computer programs, marketing strategies, suppliers, customers and potential customers.  It was acknowledged in writing "It is extremely important that that all such information remain confidential, and particularly not be disclosed to our competitors."  It was further acknowledged in writing that no employee should have, or appear to have, personal interests that actually or potentially conflict with the best interests of the company.

35. HILL supervised BOGUE, HENDRICKSON and others and had knowledge of the employee handbook provisions.  HILL collected the signed handbooks from the team she managed and discussed with ESCROW.COM's management possible revisions.  HILL acknowledged and agreed to the provisions set forth in the employee handbook.

36. Prior to November 21, 2013 and without ESCROW.COM's knowledge or consent, HILL solicited BOGUE and HENDRICKSON to join her new company, which was going to be financed by MCNAIR.  HILL on behalf of ESCROW HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN and with MCNAIR's consent offered BOGUE and HENDRICKSON compensation to breach their written and implied covenants with ESCROW.COM and to disclose the proprietary and confidential property and ideas that belonged to ESCROW.COM.  Subsequently, HILL, BOGUE and HENDRICKSON, (while receiving salaries and income from Plaintiff for services to be performed as employees of Plaintiff for Plaintiff's benefit), acquired and took for their own personal use customer lists, records, materials, equipment, drawings, documents and data pertaining to the process, business model, invention, trade secrets and confidential information of ESCROW.COM.  Further, while being paid to perform services for ESCROW.COM defendants HILL, BOGUE and HENDRICKSON spent their time advancing their own personal interests for an

unauthorized and unlicensed company they were forming to interfere with and damage the business of Plaintiff and to perform a fraud upon the public for personal gain. Plaintiff is informed and believes that HILL initiated the action and, in violation of the express terms of the EPIA, wrongfully solicited ESCROW.COM employees BOGUE and HENDRICKSON to join her. The conduct by HILL commenced at least as of November 13, 2013 when HILL LTD was allegedly registered in New Zealand.

37. During the time HILL was still employed by ESCROW.COM, and without the knowledge or consent of ESCROW.COM, HILL communicated with customers of ESCROW.COM and advised the customers that HILL would start a competing business and provide the same internet escrow services at a lower cost than ESCROW.COM's pricing. HILL failed to disclose that the business would not be authorized or licensed as required by law in the state of California or other pertinent jurisdictions. HILL, in her capacity as Director of Business Development, had access to confidential and proprietary information of ESCROW.COM's clients, including MCNAIR. In this capacity HILL learned that MCNAIR was going to receive approximately $336,000 from an escrow transaction in December 2013. With the confidential information HILL obtained from ESCROW.COM, HILL approached MCNAIR regarding investment in her new company.

38. On November 21, 2013 HILL self-terminated her employment with Plaintiff by tendering her written resignation. At the time she tendered her own resignation, HILL also tendered the resignations of BOGUE and HENDRICKSON. At that time and for the first time HILL disclosed to ESCROW.COM that HILL was going to start her own internet escrow company and operate it in California. She did not state where in California at that time. It was later learned HILL, BOGUE and HENDRICKSON would be performing the escrow services out of their own homes in Orange County.

39. Paragraph 2 of the EPIA requires Hill to, among other things, and upon request of Plaintiff, surrender and deliver to Plaintiff all customer lists, records, materials, equipment,

drawings, documents and data of any nature pertaining to any invention, trade secret or confidential information of Plaintiff or to her employment, and she will not take with her, unless otherwise consented to in writing by Plaintiff, any description containing or pertaining to any confidential information, knowledge or data of Plaintiff, which she may produce or obtain during the course of her employment.

40. On November 26, 2013 defendants issued a press release: "One aspect of the domain space that bridges the whole industry is that of escrow; and the one person better known than any other in that context is the former Director of Business Development at Escrow.com, Ms Andee Hill. Ms. Hill has established the licensed international escrow enterprise, Escrow Hill Limited with the backing of long-time friend and industry entrepreneur, Gregg McNair: ...EscrowHill.Com's dream team includes Ryan Bogue as General Manager and Donald Hendrickson as Operations Manager."

41. On or about November 27, 2013 HILL formed a Nevada LLC known as Administrative Services, LLC. ("HILL ADMIN"). Plaintiff is informed and believes that HILL ADMIN was formed for the purpose of administering the scheme alleged herein, performing accounting functions, distributing accounts and profits between defendants and/or to create a shell to disguise the distribution of the profits and business activities of HILL, ESCROW HILL, ESCROWHILL.COM, HILL LTD, HILL ADMIN and MCNAIR.

42. Plaintiff made written request upon HILL on November 29, 2013 and again on December 18, 2013 for the return of any and all information had by HILL in any form or medium whatsoever as to Plaintiff and as required by the EPIA. HILL has maintained a cellular phone and number while employed by Plaintiff and which at all relevant times herein was the property of ESCROW.COM. The phone contained ESCROW.COM's customer list and customer contact information. To date there has been no compliance by HILL or any response whatsoever to Plaintiff's request. HILL has also failed to comply with her requirement to sign and deliver the Termination Certificate attached to the EPIA as Exhibit "1." HILL's refusal to return the

COMPLAINT

confidential and proprietary information and property included (but was and is not limited to) the company cell phone and number where she maintained Plaintiff's customer lists and contact information.   HILL is currently using the phone number previously owned by Plaintiff for business purposes in promoting the defendants'' illegal business and to interfere with the business of Plaintiff. While employed at ESCROW.COM the cellular telephone number was provided to HILL so that, among other business uses, the ESCROW.COM customers could contact HILL as an employee of ESCROW.COM for ESCROW.COM's business purposes.   HILL also used the cellular phone for her own personal matters.   When HILL self-terminated her employment from ESCROW.COM, HILL falsely represented that she wanted to have the phone number released to her so that her personal acquaintances could contact her.   HILL now, in operating her business, and without the permission, previous knowledge or consent of ESCROW.COM has posted the phone number associated with and known to customers of ESCROW.COM (714) 925-5731 on various blogs and information sites as a contact number for defendants' illegal business escrow activity. ESCROW.COM is damaged by this action.   When an ESCROW.COM customer tries to reach ESCROW.COM through that telephone number for internet escrow services the customer will be directed to ESCROW HILL instead.   The phone number has an Orange County, California prefix where none of the defendants are licensed to perform internet escrow services.

43. On January 9, 2014 defendant ESCROW HILL announced on the internet "EscrowHill.com is now taking transactions".   "Escrow Hill Limited is an internationally licensed escrow provider. Our license involves government oversight, independent audits and employee background checks very similar to the state of California. The license applies to all currency accounts, not just USD."   In response to a blog inquiry HILL admitted that ESCROW HILL did not have a license in California or any state in the United States to perform escrow services. "No, we do not have a California state license.  We are a global company.  Our accounts are located in New Zealand, which is where we comply with regulations."  Defendants' actions are unlawful and illegal

and not in compliance with the Money Transmission Act and California Escrow Law as set forth and pursuant to California Finance Code Sections 2002 et seq, and 17200 et seq. On January 10, 2014 HILL posted on a public forum "I am still very much in the US and when you see our fee table you will understand one good reason to have an International license." The original press release contained the phone number she used for ESCROW.COM customer contact.

44.   As of the date of the filing of this complaint the records of the California Department of Business Organizations which regulates escrow companies doing business in California did not identify HILL, ESCROW HILL, ESCROWHILL.COM, HILL LTD, HILL ADMIN, BOGUE, HENDRICKSON or MCNAIR as being licensed to perform escrow transactions in California.

45.   Plaintiff made written request upon each of BOGUE and HENDRICKSON in December, 2013 for the return of any and all information had by BOGUE and HENDRICKSON in any form or medium whatsoever as to Plaintiff and as required by the employee handbook. To date there has been no compliance by BOGUE or HENDRICKSON or any response whatsoever to Plaintiff's request.

46.   HILL, BOGUE and HENDRICKSON, breached their respective fiduciary and contractual obligations to Plaintiff by among other things, unauthorized disclosure and use of customer lists, business plans, marketing plans, pricing strategies and the like; unauthorized reproduction and delivery of confidential information to third parties; conflicting employment during their tenure at ESCROW.COM; failure to return information, confidential information and property as requested; conversion of ideas, improvements, designs, processes, research and other intellectual property rights of Plaintiff; solicitation of business from existing clientele of the company; and making statements, taking actions and failing to disclose their true intent for the purpose of fraudulently inducing Plaintiff to allow them to remain employed, receive a salary and have access to confidential information for their own personal use.

COMPLAINT

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT AGAINST DEFENDANT HILL

47.   Plaintiff refers to and re-alleges Paragraphs 1 through 46, inclusive, as if set forth at length herein.

48.   The EIPA (Exhibit A) was a written contract agreement entered between Plaintiff and defendant HILL.

49.   HILL breached the written contract by unauthorized disclosure and use of customer lists, business plans, marketing plans, pricing strategies and the like; unauthorized reproduction and delivery of confidential information to third parties; conflicting employment during Hill's tenure at ESCROW.COM; failure to return information as required under the EPIA; failure to sign and deliver the Termination Certificate; conversion of ideas, improvements, designs, processes, research and other intellectual property rights of Plaintiff; solicitation and hiring of no less than 2 employees of the company and proprietary information they had relating to the company; solicitation of business from existing clientele of the company; and making statements, taking actions and failing to disclose her true intent for the purpose of fraudulently inducing Company to allow her to remain employed, receive a salary and have access to confidential information for her own personal use.

50.   Further, in conducting these actions, Defendant breached the implied covenant of good faith and fair dealing and interfered with Plaintiff's contractual relationships.

51.   ESCROW.COM has performed all conditions, covenants and promises required by ESCROW.COM on ESCROW.COM's part to be performed, and in accordance with the terms and conditions of the contract, except those excused by Defendants' breach, and by mitigation of the damages caused by Defendant's breach.

52.   As a result of Defendant HILL's breach Plaintiff has been damaged in a sum according to proof but in no event less than $1,000,000.00.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT AGAINST DEFENDANT BOGUE

53.   Plaintiff refers to and re-alleges Paragraphs 1 through 50, inclusive, as if set forth at

COMPLAINT

length herein.

54.    BOGUE entered into an oral employment agreement with Plaintiff and was employed beginning approximately May 5, 2008. At the time he was hired BOGUE executed a written agreement acknowledging all proprietary information of ESCRROW.COM, tangible or intangible, whether disclosed to, learned by or even developed by him during the course of his employment remained the property of ESCROW.COM.  This information included but was not limited to: knowledge, technique, process, customer information, pricing and contract terms. During the course of his employment BOGUE also agreed to and acknowledged as his contractual duties the terms of the Employee Handbook. In the Employee Handbook it was acknowledged in writing "It is extremely important that that all such information remain confidential, and particularly not be disclosed to our competitors." It was further acknowledged in writing that no employee should have, or appear to have, personal interests that actually or potentially conflict with the best interests of the company.

55. BOGUE breached the written agreement and contractual obligations to Plaintiff by among other things, unauthorized disclosure and use of customer lists, business plans, marketing plans, pricing strategies and the like; unauthorized reproduction and delivery of confidential information to third parties; conflicting employment during his tenure at ESCROW.COM; failure to return information, confidential information and property as requested; conversion of ideas, improvements, designs, processes, research and other intellectual property rights of Plaintiff; solicitation of business from existing clientele of the company; and making statements, taking actions and failing to disclose his true intent for the purpose of fraudulently inducing Plaintiff to allow him to remain employed, receive a salary and have access to confidential information for his own personal use.

56.    Further, in conducting these actions, Defendant breached the implied covenant of good faith and fair dealing and interfered with Plaintiff's contractual relationships.

COMPLAINT

57. ESCROW.COM has performed all conditions, covenants and promises required by ESCROW.COM on ESCROW.COM's part to be performed, and in accordance with the terms and conditions of the contract, except those excused by Defendant's breach, and by mitigation of the damages caused by Defendant's breach.

58. As a result of Defendant's breach Plaintiff has been damaged in a sum according to proof but in no event less than $1,000,000.00.

## THIRD CAUSE OF ACTION

### BREACH OF CONTRACT AGAINST DEFENDANT HENDRICKSON

59. Plaintiff refers to and re-alleges Paragraphs 1 through 58, inclusive, as if set forth at length herein.

60. HENDRICKSON entered into an oral employment agreement with Plaintiff and was employed beginning approximately January 4, 2010. At the time he was hired HENDRICKSON executed a written agreement acknowledging all proprietary information of ESCRROW.COM, tangible or intangible, whether disclosed to, learned by or even developed by him during the course of his employment remained the property of ESCROW.COM. This information included but was not limited to: knowledge, technique, process, customer information, pricing and contract terms. During the course of his employment HENDRICKSON also agreed to and acknowledged as his contractual duties the terms of the Employee Handbook. In the Employee Handbook it was acknowledged in writing "It is extremely important that that all such information remain confidential, and particularly not be disclosed to our competitors." It was further acknowledged in writing that no employee should have, or appear to have, personal interests that actually or potentially conflict with the best interests of the company.

61. HENDRICKSON breached the written agreement and contractual obligations to Plaintiff by among other things, unauthorized disclosure and use of customer lists, business plans, marketing plans, pricing strategies and the like; unauthorized reproduction and delivery of confidential information to third parties; conflicting employment during his tenure at ESCROW.COM; failure to return information, confidential information and property as requested;

COMPLAINT

conversion of ideas, improvements, designs, processes, research and other intellectual property rights of Plaintiff; solicitation of business from existing clientele of the company; and making statements, taking actions and failing to disclose his true intent for the purpose of fraudulently inducing Plaintiff to allow him to remain employed, receive a salary and have access to confidential information for his own personal use.

62. Further, in conducting these actions, Defendant breached the implied covenant of good faith and fair dealing and interfered with Plaintiff's contractual relationships.

63. ESCROW.COM has performed all conditions, covenants and promises required by ESCROW.COM on ESCROW.COM's part to be performed, and in accordance with the terms and conditions of the contract, except those excused by Defendant's breach, and by mitigation of the damages caused by Defendant's breach.

64. As a result of Defendant's breach Plaintiff has been damaged in a sum according to proof but in no event less than $1,000,000.00.

### FOURTH CAUSE OF ACTION
### FOR BREACH OF FIDUCIARY DUTY
### AGAINST HILL, BOGUE and HENDRICKSON

65. Plaintiff refers to and re-alleges Paragraphs 1 through 64, inclusive, as if set forth at length herein.

66. At the times herein mentioned until November 21, 2013, defendants HILL, BOGUE and HENDRICKSON were employees of the Plaintiff. As the Plaintiff's employee, each such defendant had access to Plaintiff's confidential and proprietary information in the course of his/her employment at the Plaintiff's business. All of the knowledge, information and experience HILL, BOGUE and HENDRICKSON had relating to internet escrow services was obtained by them during their employment at ESCROW.COM. None had previous experience as an authorized escrow agent. HILL's previous experience was as a hairdresser.

67. By virtue of each of said defendant's employment by the Plaintiff, the defendant owed to the Plaintiff a fiduciary duty, and by virtue of the Plaintiff having placed confidence in the fidelity

and integrity of the defendants in entrusting the defendants with the authority to have access to confidential and proprietary information, a confidential relationship existed at all times herein mentioned between the Plaintiff and each such defendant.   HILL and BOGUE participated in website design and were paid to be involved in the development of website designs for the benefit of ESCROW.COM.

68.   Despite having voluntarily accepted the trust and confidence reposed in him/her by the Plaintiff with regard to the Plaintiff's, confidential and proprietary information and in violation of this relationship of trust and confidence, each such defendant abused the trust and confidence of the Plaintiff by, on the following occasions, accepting salaries and wages and from Plaintiff while at the same time having access to and using Plaintiff's confidential and proprietary information for the benefit of a competitor.

69.   Each defendant did the acts herein alleged with the intent to deceive and defraud the Plaintiff, and the defendants concealed from the Plaintiff the fact that the defendants were promoting defendants' own personal interests to the prejudice of Plaintiff and had obtained confidential and proprietary information from the Plaintiff's business for the defendants' own use.   The defendants did the acts alleged herein with the intent to induce reliance by the Plaintiff in the continuing fidelity of the defendants as employees entrusted with the Plaintiff's confidential and proprietary information.

70.   The Plaintiff in fact placed confidence and reliance in each defendant until on or about November 21, 2013, when, Plaintiff discovered the true facts concerning defendants promoting and working for the defendants' personal use and benefit, as alleged herein.   The Plaintiff reasonably and justifiably relied on the defendants, and each of them, in view of their long-standing employer-employee relationship.

71.   As a result of the fraud of the defendants as herein alleged, the Plaintiff has been damaged in a sum according to proof but no less than $1,000,000.

72.   The aforementioned conduct of the defendants, and each of them, was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention on the part of the defendants of thereby depriving the Plaintiff of property or legal rights or

otherwise causing injury, and was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### FIFTH CAUSE OF ACTION

### FOR CONVERSION AGAINST HILL, BOGUE, HENDRICKSON, MCNAIR, ESCROW HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN

73. Plaintiff refers to and re-alleges Paragraphs 1 through 72, inclusive, as if set forth at length herein.

74. At all times herein mentioned, defendants HILL, MCNAIR, BOGUE and HENDRICKSON were each the agent and employee of defendant ESCROW HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his/her codefendant and pursuant to a plan and conspiracy to commit the acts alleged.

75. At all times herein mentioned, ESCROW.COM was entitled to exclusive possession of the following property: customer lists, customer information, pricing lists, software and engineering processes, business plans, marketing plans, pricing strategies, business models, designs, forms, agreements, written procedures and the like and as to HILL a cellular telephone that contained customer lists and customer identification information (collectively "the Property").

76. In the course of their employment with Plaintiff HILL, BOGUE and HENDRICKSON, and each of them, were aware the property belonged to Plaintiff, were trusted with access to the Property during their employment and acknowledged in writing that they knew the Property belonged to Plaintiff, that it was proprietary and that it was never to be shared with competitors. HILL, BOGUE and HENDRICKSON, and each of them, by means of secretive, false, fraudulent, and deceptive actions acquired the Property and other business records of Plaintiff, misappropriated and converted the same to his/her own personal use and possession (including intended and actual use through ESCROW HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN), without Plaintiff's knowledge or consent all of which belonged to Plaintiff. HILL, BOGUE and HENDRICKSON turned over the Property to ESCROW HILL, ESCROWHILL.COM, HILL LTD,

COMPLAINT

1  MCNAIR and HILL ADMIN who knowingly accepted the same.

2    77.  Plaintiff is informed and believes and thereon alleges that HILL is the Chief Executive

3  Officer of ESCROW HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN and/or managed

4  and controlled and had authority to bind ESCROW HILL, ESCROWHILL.COM, HILL LTD and

5  HILL ADMIN as did MCNAIR.  At the time of the making of the representations herein alleged and

6  at all times herein mentioned HILL was acting within the course and scope of her employment and

7  authority for ESCROW HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN.   HILL and

8  MCNAIR approved and ratified the actions alleged herein taken by HILL, BOGUE and

9  HENDRICKSON for the benefit of ESCROW HILL, ESCROWHILL.COM, HILL LTD and HILL

10  ADMIN and the defendants individually.

11    78.  As a proximate result of Defendant's conversion of the above-mentioned property,

12  Plaintiff suffered damages in a sum according to proof but believed to be at least $8,000,000.

13    79. In doing the acts alleged, HILL, MCNAIR BOGUE, HENDRICKSON, ESCROW

14  HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN acted with oppression, fraud and

15  malice entitling Plaintiff to punitive damages.

16  <u>**SIXTH CAUSE OF ACTION**</u>

17  **FOR FRAUD BY REPRESENTATION AGAINST**

18  **HILL, BOGUE HENDRICKSON, ESCROW HILL, ESCROWHILL.COM, HILL**

19  **LTD and HILL ADMIN**

20    80.  Plaintiff refers to and re-alleges Paragraphs 1 through 79, inclusive, as if set forth at

21  length herein.

22    81.  From on or about October 2013 until November 21, 2013 defendants, HILL, BOGUE

23  and HENDRICKSON for the purpose of inducing Plaintiff to pay wages, compensation and benefits

24  and to have access to the Property, falsely and fraudulently represented to Plaintiff, by their actions

25  and conduct and their failure to state or indicate otherwise, that they were at all times actually

26  working for the Plaintiff in accordance with the respective written agreements and the Plaintiff's

27  guidelines, were the Plaintiff's agents, were working for the best interests of the Plaintiff and were

28  performing the duties they were being paid to perform for the purpose of promoting Plaintiff's

1    business, reputation and goodwill so that Plaintiff could make a profit.

2        82. These representations were in fact false, and defendants knew of the falsity. The true

3    facts were defendants were acting to promote their own independent interests, business development

4    and fraudulent income. The acts, representations, secrecy, and failure to disclose were done by or

5    with the knowledge consent of each defendant and in accordance with and pursuant to a plan and in

6    furtherance of a conspiracy.

7        83. Plaintiff justifiably relied on defendants' representations and was thereby induced to

8    continue to pay defendants wages and provide benefits and allow defendants access to the Property.

9    Had Plaintiff known the true facts Plaintiff would not have allowed defendants to remain employed

10   and would have terminated them prior to the time they accessed the Property.

11       84. At all times herein mentioned, defendants HILL, MCNAIR, BOGUE and

12   HENDRICKSON were each the agent and employee of defendant ESCROW HILL,

13   ESCROWHILL.COM, HILL LTD and HILL ADMIN and in doing the things herein alleged was

14   acting within the course and scope of such agency and employment and with the permission and

15   consent of his/her codefendant. and with the permission and consent of his/her codefendant and

16   pursuant to a plan and conspiracy to commit the acts alleged.

17       85. Plaintiff is informed and believes and thereon alleges that HILL is the Chief Executive

18   Officer of ESCROW HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN and MCNAIR is

19   also an officer.  HILL and MCNAIR managed and controlled and had authority to bind ESCROW

20   HILL, ESCROWHILL.COM, HILL LTD and HILL ADMIN.  At the time of the making of the

21   representations herein alleged and at all times herein mentioned HILL and MCNAIR were acting

22   within the course and scope of their employment and authority for ESCROW HILL, HILL LTD and

23   HILL ADMIN and approved and ratified the actions alleged herein taken by HILL, BOGUE and

24   HENDRICKSON for the benefit of ESCROW HILL, ESCROWHILL.COM and HILL LTD and

25   HILL ADMIN and each of the defendants.

26       86. As a proximate result of defendants fraud Plaintiff suffered damages in a sum according

27   to proof but in no event less than $8,000,000.

28       87. In doing the acts alleged, HILL, BOGUE and HENDRICKSON, ESCROW HILL,

1   ESCROWHILL.COM and HILL LTD and HILL ADMIN acted with oppression, fraud and malice

2   entitling Plaintiff to punitive damages.

### SEVENTH CAUSE OF ACTION FOR

### FRAUD BY NON-DISLOSURE AGAINST

### HILL, MCNAIR, BOGUE HENDRICKSON, ESCROW HILL,

### ESCROWHILL.COM and HILL LTD and HILL ADMIN

7   88.   Plaintiff refers to and re-alleges Paragraphs 1 through 87, inclusive, as if set forth at

8   length herein.

9   89.   At all times herein mentioned, defendants HILL, BOGUE and HENDRICKSON were

10   each the agent and employee of defendant ESCROW HILL, ESCROWHILL.COM and HILL LTD

11   and HILL ADMIN and in doing the things herein alleged was acting within the course and scope of

12   such agency and employment and with the permission and consent of his/her codefendant.   The acts,

13   representations, secrecy, and failure to disclose were done by or with the knowledge consent of each

14   defendant and in accordance with and pursuant to a plan and in furtherance of a conspiracy.

15   90.   Plaintiff is informed and believes and thereon alleges that HILL is the Chief Executive

16   Officer of ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and/or

17   managed and controlled and had authority to bind ESCROW HILL, ESCROWHILL.COM and

18   HILL LTD and HILL ADMIN.   At the time of the making of the representations herein alleged and

19   at all times herein mentioned was acting within the course and scope of her employment and

20   authority for ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and

21   approved and ratified the actions alleged herein.

22   91.   From on or about June 2013 until November 21, 2013 defendants, HILL, BOGUE and

23   HENDRICKSON while being paid salaries and benefits by Plaintiff for the purpose of having access

24   to Plaintiff's Property and inducing Plaintiff to continue to pay wages, compensation and benefits

25   and to have access to the Property, falsely and fraudulently failed to disclose to Plaintiff that they

26   were at all times actually working for ESCROW HILL or performing actions to benefit ESCROW

27   HILL.

28   92.   The failure to disclose was in fact a false act.   The failure to disclose was intentional,

COMPLAINT

was designed to mislead, was likely to mislead the Plaintiff and did in fact mislead the Plaintiff. The likelihood of misleading Plaintiff was increased in light of the other representations made by the defendants concerning their agreements to honor Plaintiff's confidential and proprietary information during and after their employment.

93. The failures to disclose information and suppressions of information herein alleged to have been made by the defendants were made with the intent to induce the Plaintiff to act in the manner herein alleged in reliance thereon.

94. The Plaintiff, at the time these failures to disclose and suppressions of facts occurred, and at the time the Plaintiff took the actions herein alleged, was ignorant of the existence of the facts that the defendant suppressed and failed to disclose. If the Plaintiff had been aware of the existence of the facts not disclosed by the defendant, the Plaintiff would not have, acted as it did. Plaintiff justifiably was misled to continue to pay defendants wages and provide benefits and allow defendants access to the Property. Had Plaintiff known the true facts Plaintiff would not have allowed defendants to remain employed and would have terminated them prior to the time they accessed the Property.

95. As a proximate result of defendants failure to disclose to Plaintiff suffered damages in a sum according to proof but in no event less than $8,000,000 including but not limited to the value of the wages and benefits paid to defendants and the value of the lost Property including, but not limited to, lost profits and income.

96. In doing the acts alleged, HILL, BOGUE and HENDRICKSON acted with oppression, fraud and malice. The conduct of the defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention on the part of the defendants of thereby depriving the Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

///

///

///

COMPLAINT

### EIGHTH CAUSE OF ACTION FOR

### CONSTRUCTIVE FRAUD AGAINST DEFENDANTS MCNAIR

### HILL, BOGUE HENDRICKSON, ESCROW HILL, ESCROWHILL.COM and HILL

### LTD and HILL ADMIN

97. Plaintiff refers to and re-alleges Paragraphs 1 through 96, inclusive, as if set forth at length herein.

98. At all times herein mentioned, defendants HILL, BOGUE and HENDRICKSON were employees of the Plaintiff November 21, 2013. As the Plaintiff's employee, each such defendant had access to Plaintiff's confidential and proprietary information in the course of his/her employment at the Plaintiff's business.

99. By virtue of each of said defendant's employment by the Plaintiff, the defendant owed to the Plaintiff a fiduciary duty, and by virtue of the Plaintiff's having placed confidence in the fidelity and integrity of the defendant in entrusting the defendant with the authority to have access to confidential and proprietary information, a confidential relationship existed at all times herein mentioned between the Plaintiff and each such defendant.

100. Despite having voluntarily accepted the trust and confidence reposed in him/her by the Plaintiff, and in violation of this relationship of trust and confidence, each such defendant abused the trust and confidence of the Plaintiff by, on multiple occasions, accepting salaries and wages and from Plaintiff while at the same time having access to and using Plaintiff's confidential and proprietary information for the benefit of a competitor.

101. At all times herein mentioned, defendants HILL, BOGUE and HENDRICKSON were each the agent and employee of defendant ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his/her codefendant. The acts, representations, secrecy, and failure to disclose were done by or with the knowledge consent of each defendant and in accordance with and pursuant to a plan and in furtherance of a conspiracy.

102. The defendants did the acts herein alleged with the intent to deceive and defraud the Plaintiff, and the defendants concealed from the Plaintiff the fact that the defendants were promoting

each defendant's own personal interests to the prejudice of Plaintiff and had obtained confidential and proprietary information from the Plaintiff's business for the defendants' own use. The defendants did the acts alleged herein with the intent to induce reliance by the Plaintiff in the continuing fidelity of the defendants as an employee entrusted with the Plaintiff's confidential and proprietary information.

103. The Plaintiff in fact placed confidence and reliance in the defendants until on or about November 21, 2013, when, Plaintiff discovered the true facts concerning defendants promoting and working for the defendants' personal use and benefit, as alleged above. The Plaintiff reasonably relied on the defendants in view of their long-standing employer-employee relationship.

104. As a result of the fraud of the defendants, and each of them, as herein alleged, Plaintiff has been damaged in a sum according to proof but in no event less than $8,000,000 including but not limited to the value of the wages and benefits paid to defendants and the value of the lost Property including but not limited to lost profits and income.

105. The aforementioned conduct of the defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention on the part of the defendants of thereby depriving the Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## NINTH CAUSE OF ACTION

**FOR CONSPIRACY TO COMMIT FRAUD, CONVERSION, OPERATE AN UNLICESNED ENTITY, PERFORM UNFAIR BUSINESS PRACTICES, INTEREFERE WITH BUSINESS RELATIONSHIPS, INTEREFERE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST DEFENDANTS HILL, BOGUE, HENDRICKSON, MCNAIR, ESCROW HILL, ESCROWHILL.COM, HILL LTD, HILL ADMIN and DOES 1 through 50**

106. Plaintiff refers to and re-alleges Paragraphs 1 through 105, inclusive, as if set forth at length herein.

107. At a time prior to November 2013 and continuing to the present, Defendants HILL,

1  BOGUE, HENDRICKSON, MCNAIR, ESCROW HILL, ESCROWHILL.COM and HILL LTD,
2  HILL ADMIN and DOES 1 through 50 knowingly and willfully conspired and agreed among
3  themselves to perform the acts as alleged herein, including but not limited to a plan for HILL,
4  BOGUE and HENDRICKSON to remain employed until November 21, 2013, during that time
5  acquire confidential and proprietary information of Plaintiff for purposes inconsistent and prejudicial
6  to Plaintiff's business but beneficial to their own plan and scheme, to fraudulently convert and
7  transfer confidential information (including but not limited to customer lists, customer identification
8  information, pricing strategies, business models, plans, strategies and assets) of Plaintiff (including
9  but not limited to customer lists, customer identification information, pricing strategies, business
10  models, plans, strategies and assets) to each other and conceal the same from Plaintiff as herein
11  alleged all so that each of said Defendants could have financial gain.  As a further part of the plan
12  defendants conspired to operate the business out of the homes of HILL, BOGUE and
13  HENDRICKSON in Orange County California and represent to the public that it was being done in
14  New Zealand to avoid the cost of having to comply with California Statute and regulations and
15  therefore be able to under price Plaintiff in the market.  Defendants, and each of them, did the acts
16  and things herein alleged pursuant to and in furtherance of the conspiracy and agreement.

17      108. Defendants HILL and MCNAIR, as managing agent of each Defendant entity,
18  furthered the conspiracy by encouraging the same, forming the entities to operate the same, ratifying
19  the same, authorizing the same and adopting the acts of the remaining Defendants.  Plaintiff is
20  informed and believes and thereon alleges that HILL is the Chief Executive Officer of ESCROW
21  HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and/or managed and controlled and
22  had authority to bind ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN.
23  At the time of the making of the representations, performing the acts herein alleged and at all times
24  herein mentioned, HILL was acting within the course and scope of her employment and authority for
25  ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and approved and
26  ratified the actions alleged herein.

27      109. Plaintiff is informed and believes that the overt acts of the conspiracy continue.
28  Defendants continue to make use of the converted confidential information and assets of Plaintiff

and continue to operate an internet escrow business from locations in California without a license to do so and without providing bonding, security and other requirements as set forth by California statutes and regulations governing internet escrow companies in California.

110. Plaintiff lacked knowledge of the conspiracy and acts alleged herein until after November 2013.

111. As a proximate result of the wrongful acts, Plaintiff has been generally damaged in a sum according to proof but in no event less than $8,000,000.

112. In doing the acts alleged, defendants, and each of them, acted with oppression, fraud and malice entitling Plaintiff to punitive damages.

### TENTH CAUSE OF ACTION

### FOR UNFAIR BUSINESS PRACTICES

### AGAINST DEFENDANTS  ESCROW HILL, ESCROWHILL.COM, HILL LTD,

### HILL ADMIN, HILL, BOGUE, HENDRICKSON, MCNAIR and DOES 1 through 50

113. Plaintiff refers to and re-alleges Paragraphs 1 through 112, inclusive, as if set forth at length herein.

114. Beginning on or about January 9, 2014 defendants, and each of them, offered for sale and began to market and sell to customers internet escrow services at the price approximately 20% lower than Plaintiff's price.

115. There is a great risk in passing money and property through internet transactions. The State of California has set forth laws which protect the individuals and businesses that invest money and property and place risk in such transactions and regulates and oversees "money transmitters" and "internet escrow companies" who operate or whose employees or agents operate such businesses within the State of California.

116. Pursuant to California Escrow Law: "It shall be unlawful for any person to engage in business as an escrow agent within this state except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." Finance Code § 17200. "Person" means, in addition to the singular, persons, group of persons, co-operative, association, company, firm, partnership, corporation, limited liability company, or other legal entity  (Finance Code §

COMPLAINT

17002.5); "Internet escrow agent" means any person engaged in the business of receiving escrows for deposit or delivery over the Internet (Finance Code § 17004); "Joint control agent" means a person engaging in the business of receiving money or other property for disbursal or use in payment of the cost of labor, materials, services, permits, fees, or other items of expense incurred in the construction of improvements upon real property. As used in this section, "in the business" means the conduct of the aforesaid transaction either for compensation or without compensation as a primary business or as an incidence to another business (Finance Code § 17005.1); "Person subject to this division" means any person undertaking the performance of escrow agent services. Unless specifically exempted, as in Section 17006, however, this definition shall not be used to exclude anyone. (Finance Code § 17005.4); Within this state" means any activity of a person relating to receiving escrows for deposit or delivery that originates from this state and is directed to persons outside this state, or that originates from outside this state and is directed to persons inside this state, or that originates inside this state and is directed to persons inside this state, or that leads to the formation of a contract and the offer or acceptance thereof is directed to a person in this state, whether from inside or outside this state and whether the offer was made inside or outside this state. (Finance Code § 17005.5).

117.   The license application standards have strict requirements including but not limited to having a person with knowledge and experience of accounting and Escrow Law and regulations on duty at each business location of the licensed internet escrow agent (Finance Code § 17200.8); bond requirements (Finance Code § 17202); and background and fingerprint identification (Finance Code § 17209);

118.   Any person who willfully violates the Escrow Law licensing provisions or who willfully violates the rules so identified is subject to criminal sanctions up to and including fine and imprisonment (Finance Code § 17700).

119.   Pursuant to California's Money Transmission Act at Finance Code § 2002: "(j) 'In California' or 'in this state' means physically located in California, or with, to, or from persons located in California" and   (s) 'Receiving money for transmission' or 'money received for transmission' means receiving money or monetary value in the United States for transmission

within or outside the United States by electronic or other means" Finance Code§ 2030 requires a license to perform this activity: "License required: (a) A person shall not engage in the business of money transmission in this state, or advertise, solicit, or hold itself out as providing money transmission in this state, unless the person is licensed or exempt from licensure under this division or is an agent of a person licensed or exempt from licensure under this division. (b) A license under this division is not transferable or assignable (italics added).

120. Defendants, and each of them, are participating in an agreed upon business activity to perform internet escrow services and money transmission services from within the state of California for compensation, as a primary business or as an incidence to another business and make a profit therefrom without an escrow license or a money transmission license. The acts, representations, secrecy, and failure to disclose were done by or with the knowledge consent of each defendant and in accordance with and pursuant to a plan and in furtherance of a conspiracy.

121. These offers of sale and sales of internet escrow services are causing Plaintiff significant loss of revenue because defendants are offering the service at a cost 20% cheaper than Plaintiff's price and are able to do so because in providing their price they intentionally avoid the cost incurred of complying with California law and without the cost of providing the services with an escrow license or money transmitter license.

122. Pursuant to California Escrow Law: "It shall be unlawful for any person to engage in business as an escrow agent within this state except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." Finance Code § 17200. "Person" means, in addition to the singular, persons, group of persons, co-operative, association, company, firm, partnership, corporation, limited liability company, or other legal entity (Finance Code § 17002.5); "Internet escrow agent" means any person engaged in the business of receiving escrows for deposit or delivery over the Internet (Finance Code § 17004); "Joint control agent" means a person engaging in the business of receiving money or other property for disbursal or use in payment of the cost of labor, materials, services, permits, fees, or other items of expense incurred in the construction of improvements upon real property. As used in this section, "in the business" means the conduct of the aforesaid transaction either for compensation or without compensation as

a primary business or as an incidence to another business (Finance Code § 17005.1); "Person subject to this division" means any person undertaking the performance of escrow agent services. Unless specifically exempted, as in Section 17006, however, this definition shall not be used to exclude anyone. (Finance Code § 17005.4); Within this state" means any activity of a person relating to receiving escrows for deposit or delivery that originates from this state and is directed to persons outside this state, or that originates from outside this state and is directed to persons inside this state, or that originates inside this state and is directed to persons inside this state, or that leads to the formation of a contract and the offer or acceptance thereof is directed to a person in this state, whether from inside or outside this state and whether the offer was made inside or outside this state. (Finance Code § 17005.5).

123.   The license application standards have strict requirements including but not limited to having a person with knowledge and experience of accounting and Escrow Law and regulations on duty at each business location of the licensed internet escrow agent (Finance Code § 17200.8); bond requirements (Finance Code § 17202); and background and fingerprint identification (Finance Code § 17209);

124.   Any person who willfully violates the Escrow Law licensing provisions or who willfully violates the rules so identified is subject to criminal sanctions up to and including fine and imprisonment (Finance Code § 17700).

125.   Pursuant to California's Money Transmission Act at Finance Code § 2002: "(j) 'In California' or 'in this state' means physically located in California, or with, to, or from persons located in California" and   (s) 'Receiving money for transmission' or 'money received for transmission' means receiving money or monetary value in the United States for transmission within or outside the United States by electronic or other means" Finance Code§ 2030 requires a license to perform this activity: "License required: (a) A person shall not engage in the business of money transmission in this state, or advertise, solicit, or hold itself out as providing money transmission in this state, unless the person is licensed or exempt from licensure under this division or is an agent of a person licensed or exempt from licensure under this division. (b) A license under this division is not transferable or assignable (italics added).

COMPLAINT

126.   Defendants, and each of them, are participating in an agreed upon business activity to perform internet escrow services and money transmission services from within the state of California for compensation, as a primary business or as an incidence to another business and make a profit therefrom without an escrow license or a money transmission license.

127.   Plaintiff is informed and believes and thereon alleges that defendant(s) performed the above-mentioned act(s) for the purpose of injuring Plaintiff and other competitors.

128.   Plaintiff is informed and believes and thereon alleges that HILL is the Chief Executive Officer of ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and/or managed and controlled and had authority to bind ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and DOES 1 through 25.   At the time of the making of the representations herein alleged and at all times herein mentioned was acting within the course and scope of her employment and authority for ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and approved and ratified the actions alleged herein.

129.   Defendant(s) threatens/threaten to and unless restrained, will continue to provide internet escrow services without a license, without complying with the statutory requirements, without providing a proper bond, without a monetary transmitter license and continue to offer to sell and sell to purchasers the above-mentioned services below cost and not in compliance with California statutes and regulations, all actions prohibited by the Unfair Business Practices Act.

130.   As a proximate result of the above-mentioned act(s) of defendant(s), Plaintiff has and will be deprived of the patronage of a large number of its actual and potential customers, all to Plaintiff's damage in the sum of $8,000,000, trebled to the sum of $24,000,000.   Plaintiff has a personal or property right or interest of the kind that injunctive relief is available to protect, such as the ownership and possession the right to conduct an established internet escrow business in compliance with California laws and regulations.

131.   Defendants HILL, BOGUE and HENDRICKSON were former employees of Plaintiff and had access to Plaintiff's confidential and proprietary information including but not limited to customer lists and pricing schedules and methods as a licensed and bonded internet escrow provider.

132.   Defendants' wrongful conduct, unless and until enjoined and restrained by order of this

COMPLAINT

court, will cause great and irreparable injury to Plaintiff as damages would not completely compensate for the injury to Plaintiff's business reputation and goodwill.

133. Plaintiff has no adequate remedy at law for the injuries currently being suffered or that are threatened as it will be impossible for Plaintiff to determine the precise amount of damage that it will suffer if defendants' conduct is not restrained and Plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for its injuries.

134. No adequate remedy exists at law for the injuries suffered by Plaintiff herein, insofar as further harm will result to Plaintiff from defendant's wrongful act of conversion absent injunctive relief. If this court does not grant injunctive relief of the type and for the purpose specified herein, Plaintiff will suffer irreparable injury.  Therefore, Plaintiff requests the following injunctive relief: (a) an order enjoining defendants from providing internet escrow services in California without a license and bond: (b) an order enjoining defendants from providing internet escrow services in California without complying with California regulations and statutes as a money transmitter; (c) an order enjoining defendants from providing internet escrow services with any person or entity without making a full disclosure on its website of this court's restraining order and (d) enjoining defendants from using telephone number 714-925-5731 for any business purpose.

## ELEVENTH CAUSE OF ACTION

## INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AGAINST DEFENDANTS ESCROW HILL, ESCROWHILL.COM, HILL LTD, HILL ADMIN, HILL, BOGUE, HENDRICKSON, MCNAIR and DOES 1 THROUGH 50

135. Plaintiff refers to and re-alleges Paragraphs 1 through 134, inclusive, as if set forth at length herein.

136. Plaintiff has established itself as a leader in the internet service as being an escrow service provider for the sale, transfer and exchange of domain names. In the domain name business there is an industry of people and businesses who participate regularly as repeat clients that has done business for in the past and expects to do business for in the future. The names and confidential identification information of these customers were part of the customer lists, confidential

information and proprietary information that HILL, BOGUE and HENDRICKSON had access to during their employment to and which they each acknowledged in writing was confidential and proprietary to Plaintiff. Plaintiff had an existing relationship with these customers and customarily provided internet escrow services for these customers whether the customers were buyers or sellers. Defendants, and each of them, knew Plaintiff had an existing relationship with these customers. Through the course of providing the services successfully over the years and through a reputation established in the industry there existed an economic relationship between Plaintiff and its third party domain name customers that contained probable future economic benefits to Plaintiff.

137. Between 2000 and to the present, Plaintiff customarily provided the internet escrow service to its domain name customers.

138. Defendants HILL, BOGUE and HENDRICKSON knew of the above-described relationship existing between Plaintiff and the domain name customers through their employment with Plaintiff through November 2013. Through their employment HILL, BOGUE and HENDRICKSON worked on, supervised and/or managed the domain name transactions with the domain name clients. Sometime before November 21, 2013 and continuing thereafter defendants acted in a way to disrupt the relationship Plaintiff had with its domain name customers. During their employment, defendants HILL, BOGUE and HENDRICKSON, with the knowledge and consent of the other defendants, contacted the Plaintiff's domain name customers via telephone, via the internet and in person at an industry conference in Florida and advised the customers that HILL was going to start her own internet domain name escrow service and provide the service at a lower cost than Plaintiff. Defendants falsely represented to the domain name customers that through HILL's new companies, with co-defendants BOGUE and HENDRICKSON and the backing of MCNAIR, her new company could provide the domain name internet escrow services legally, safely, securely and at a 20% lower cost than ESCROW.COM. The acts, representations, secrecy, and failure to disclose were done by or with the knowledge consent of each defendant and in accordance with and pursuant

COMPLAINT

to a plan and in furtherance of a conspiracy.

139. HILL, BOGUE and HENDRICKSON, with MCNAIR's knowledge and consent, planned to and are operating the internet escrow business out of their respective homes in Orange County, California. Because they are doing so without an internet escrow license to perform such service over the internet in California and without a money transmitters license as required in California they are doing so illegally. Further, in addition they are not complying with California laws re: license standards of practice, bonding, financial reserves, accounting, training, audits, record keeping requirements or legal oversight from their business locale as a licensed internet escrow provider is required per California statute and regulation. The license application standards have strict requirements including but not limited to such things as having a person with knowledge and experience of accounting and Escrow Law and regulations on duty at each business location of the licensed internet escrow agent (Finance Code § 17200.8); bond requirements (Finance Code § 17202); and background and fingerprint identification (Finance Code § 17209).

140. Although defendants claim on the ESCROW HILL website that they are licensed to perform internet escrow services under the laws of New Zealand, they are in fact performing the services from California and are doing so in disregard and in violation of the laws of this state.

141. All of the representations (and failure to disclose the illegality) were and are being made to induce the domain name customers to sever their business relationship with Plaintiff. Defendant's false representation, constituted an unfair trade practice in violation of Business and Professions Code Section 17200. Pursuant to California Escrow Law: "It shall be *unlawful* for any person to engage in business as an escrow agent within this state except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." Finance Code § 17200

142. Beginning on or about January 8, 2014, while in California, defendants announced to the domain name trading industry that defendants were going live and were accepting agreements to

perform escrow services for domain name transactions over the internet. As a proximate result of defendant's conduct and the severance of contract negotiations by the third party domain name traders, Plaintiff has suffered damages in a sum according to proof but in no event less than $8,000,000.

143. Plaintiff is informed and believes and thereon alleges that HILL is the Chief Executive Officer of ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and/or managed and controlled and had authority to bind ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN. At the time of the making of the representations herein alleged and at all times herein mentioned, HILL was acting within the course and scope of her employment and authority for ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and DOES 1 through 25. ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and DOES 1 through 25 and approved and ratified the actions alleged herein.

144. The actions of Defendants and each of them, as alleged herein have caused injury to Plaintiff, which constitutes a RICO violation under the terms of the act. 18 U.S.C. §§ 1962(c) et seq. 18 U.S.C. §1964(c) provides for liability in civil suits brought by any person injured 'in his business or property' by a RICO violation, with a compulsory award of treble damages, costs, and attorney fees. Alternatively, the aforementioned acts of defendants, and each of them, were willful and fraudulent. Plaintiff is therefore entitled to punitive damages.

145. Defendants threaten to and unless restrained, will disrupt other contracts and business relationships between Plaintiff and its existing domain name customers, whose accounts defendants HILL, BOGUE and HENDRICKSON also supervised during the period of his/her employment with Plaintiff, to Plaintiff's great and irreparable injury, for which damages would not afford adequate relief, in that the damages would not completely compensate for the injury to Plaintiff's business reputation and goodwill.

///

///

///

///

36                                          COMPLAINT

## TWELFTH CAUSE OF ACTION
### FOR INTERFERENCE WITH BUSINESS RELATIONSHIP

### AGAINST DEFENDANTS  ESCROW HILL, ESCROWHILL.COM and HILL LTD,

### HILL ADMIN, HILL, BOGUE, HENDRICKSON, MCNAIR and DOES 1 through 50

146. Plaintiff refers to and re-alleges Paragraphs 1 through 144, inclusive, as if set forth at length herein.

147. Plaintiff has established itself as a leader in the internet service as being an escrow service provider for the sale, transfer and exchange of domain names.  In the domain name business there is an industry of people and businesses who participate regularly as repeat clients that has done business for in the past and expects to do business for in the future.  The names and confidential identification information of these customers were part of the customer lists, confidential information and proprietary information that HILL, BOGUE and HENDRICKSON had access to during their employment to and which they each acknowledged in writing was confidential and proprietary to Plaintiff.  Plaintiff had an existing relationship with these customers and customarily provided internet escrow services for these customers whether the customers were buyers or sellers.  Defendants, and each of them, knew Plaintiff had an existing relationship with these customers.  Through the course of providing the services successfully over the years and through a reputation established in the industry there existed an economic relationship between Plaintiff and its third party domain name customers that contained probable future economic benefits to Plaintiff.

148. Between 2000 and to the present, Plaintiff customarily provided the internet escrow service to its domain name customers.

149. Defendants HILL, BOGUE and HENDRICKSON knew of the above-described relationship existing between Plaintiff and the domain name customers through their employment with Plaintiff through November 2013. Through their employment HILL, BOGUE and HENDRICKSON worked on, supervised and/or managed the domain name transactions with the

COMPLAINT

domain name clients.   Sometime on or before November 21, 2013 and continuing thereafter defendants acted in a way to disrupt the relationship Plaintiff had with its domain name customers. During her employment, HILL, with the knowledge and consent of the other defendants, contacted the Plaintiff's domain name customers via telephone, via the internet and in person at an industry conference in Florida and advised the customers that she was going to start her own internet domain name escrow service and provide the service at a lower cost than Plaintiff.  Defendant HILL falsely represented to the domain name customers that through her companies with co-defendants BOGUE and HENDRICKSON and the backing of MCNAIR, her new company could provide the domain name internet escrow services legally, safely, securely and at a 20% lower cost than ESCROW.COM.

150.  HILL, BOGUE and HENDRICKSON planned to and are operating the internet escrow business out of their respective homes in Orange County, California. The acts, representations, secrecy, and failure to disclose were done by or with the knowledge consent of each defendant and in accordance with and pursuant to a plan and in furtherance of a conspiracy.

151.  Because they are doing so without an internet escrow license to perform such service over the internet in California and without a money transmitters license as required in California they are doing so illegally.  Further, in addition they are not complying with California laws re: license standards of practice, bonding, financial reserves, accounting, training, audits, record keeping requirements or legal oversight from their business locale as a licensed internet escrow provider is required per California statute and regulation. The license application standards have strict requirements including but not limited to such things as having a person with knowledge and experience of accounting and Escrow Law and regulations on duty at each business location of the licensed internet escrow agent (Finance Code § 17200.8); bond requirements (Finance Code § 17202); and background and fingerprint identification (Finance Code § 17209).

152.  Although defendants claim on the ESCROW HILL website that they are licensed to

perform internet escrow services under the laws of New Zealand, they are in fact performing the services from California and are doing so in disregard and in violation of the laws of this state.

153. All of the representations (and failure to disclose the illegality) were and are being made to induce the domain name customers to sever their business relationship with Plaintiff. Defendant's false representation, constituted an unfair trade practice in violation of Business and Professions Code Section 17200. Pursuant to California Escrow Law: "It shall be *unlawful* for any person to engage in business as an escrow agent within this state except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." Finance Code § 17200

154. Beginning on or about January 8, 2014, while in California, defendants announced to the domain name trading industry that defendants were going live and were accepting agreements to perform escrow services for domain name transactions over the internet. As a proximate result of defendant's conduct and the severance of contract negotiations by the third party domain name traders, Plaintiff has suffered damages in a sum according to proof but in no event less than $8,000,000.

155. Plaintiff is informed and believes and thereon alleges that HILL is the Chief Executive Officer of ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN. HILL and MCNAIR managed and controlled and had authority to bind ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN. At the time of the making of the representations herein alleged and at all times herein mentioned, HILL and MCNAIR were acting within the course and scope of their employment and authority for ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and DOES 1 through 25 and approved and ratified the actions alleged herein.

156. The aforementioned acts of defendants, and each of them, were willful and fraudulent. Plaintiff is therefore entitled to punitive damages.

157. Defendants threaten to and unless restrained, will disrupt other contracts and business relationships between Plaintiff and its existing domain name customers, whose accounts defendants

HILL, BOGUE and HENDRICKSON also supervised during the period of his/her employment with Plaintiff, to Plaintiff's great and irreparable injury, for which damages would not afford adequate relief, in that the damages would not completely compensate for the injury to Plaintiff's business reputation and goodwill.

### THIRTEENTH CAUSE OF ACTION

### FOR CIVIL RICO (18 U.S.C.§§ 1962(c) et seq)

### AGAINST DEFENDANTS  ESCROW HILL, ESCROWHILL.COM, HILL LTD,

### HILL ADMIN, HILL, BOGUE, HENDRICKSON, MCNAIR and DOES 1 through 50

158.  Plaintiff refers to and re-alleges Paragraphs 1 through 157, inclusive, as if set forth at length herein.

159.  Defendants ESCROW HILL, ESCROWHILL.COM, HILL LTD, HILL ADMIN, HILL, BOGUE, HENDRICKSON, MCNAIR and Does 1 through 50 together were a group associated in fact although not a combined legal entity. Said defendants were associated for the common purpose of engaging in the course of conduct of performing world-wide internet escrow services from homes in California without the required internet escrow license or money transmitter license, required compliance with applicable statutes and regulations, and required fees and costs so that they could market the service at costs substantially lower than Plaintiff could and obtain Plaintiff's business at an unfair and illegal advantage to Plaintiff's customers and potential customers. The course of conduct further including defendants HILL, BOGUE and HENDRICKSON falsely misrepresenting that they were working for the benefit of Plaintiff when in reality they were pursuing their own interests and business plan for their own financial benefit as competitors of Plaintiff.  They did this to Plaintiff's damage while being paid salary and benefits by Plaintiff and while converting Plaintiff's confidential and proprietary information as alleged herein as part of their scheme.  MCNAIR is the financial backer, HILL is the coordinator, BOGUE is the general manager, and HENDRICKSON is the operations manager. The entity defendants ESCROW

HILL, ESCROWHILL.COM, HILL LTD, HILL ADMIN and DOES 1 through 10 are mere shells through which the individuals operate, the internet services are marketed, the customer contacts are recorded, monies are transferred and fees are taken and distributed to and amongst the remaining defendants who all knowingly participate in the illegal activity. The activities of the defendants are further designed to illegally avoid state and federal income tax liability. The association of the defendants constitutes an interlocking independent business relationship, which is an association in fact within the meaning of RICO.

160. Defendants devised a scheme to defraud by providing the services from the homes of HILL, BOGUE and HENDRICKSON in California by use of the internet, wire, telephone and mail throughout the world and the United States while representing (for the purpose of avoiding California regulatory and statutory compliance and state and federal income tax requirements, that they are doing so properly from New Zealand. Defendants performed these acts with the intent to deceive and defraud and are doing so. Defendants repeatedly and continuously advertise and market their service on the internet and perform the service using the internet, telephones and the mail with customers and potential customers and in their acts of organizing and coordinating their efforts and scheme and in furtherance of their conspiracy.

161. Plaintiff has suffered and continues to suffer a proximate and direct injury as a result of defendants' conduct including but not limited to Plaintiff's loss of confidential information, customer lists, customers, identifying information, goodwill, and unfair competition. By defendants acts of providing internet escrow services from the homes of HILL, BOGUE and HENDRICKSON in California without being licensed as an internet escrow agents or money transmitters allows defendants to market and provide the internet escrow services and money transmissions at a cost substantially lower than Plaintiff. Plaintiff also operates internet escrow services out of Orange County California but is properly licensed and bonded to do so.

162. Plaintiff has established itself as a leader in the internet service as being an escrow

service provider for the sale, transfer and exchange of domain names. In the domain name business there is an industry of people and businesses who participate regularly as repeat clients that has done business for in the past and expects to do business for in the future. The names and confidential identification information of these customers were part of the customer lists, confidential information and proprietary information that HILL, BOGUE and HENDRICKSON had access to during their employment to and which they each acknowledged in writing was confidential and proprietary to Plaintiff. Plaintiff had an existing relationship with these customers and customarily provided internet escrow services for these customers whether the customers were buyers or sellers. Defendants, and each of them, knew Plaintiff had an existing relationship with these customers. Through the course of providing the services successfully over the years and through a reputation established in the industry there existed an economic relationship between Plaintiff and its third party domain name customers that contained probable future economic benefits to Plaintiff.

163. Between 2000 and to the present, Plaintiff customarily provided the internet escrow service to its domain name customers.

164. Defendants HILL, BOGUE and HENDRICKSON knew of the above-described relationship existing between Plaintiff and the domain name customers through their employment with Plaintiff through November 2013. Through their employment HILL, BOGUE and HENDRICKSON worked on, supervised and/or managed the domain name transactions with the domain name clients. Sometime on or before November 21, 2013 and continuing thereafter defendants acted in a way to disrupt the relationship Plaintiff had with its domain name customers. During her employment, HILL, with the knowledge and consent of the other defendants, contacted the Plaintiff's domain name customers via telephone, via the internet and in person at an industry conference in Florida and advised the customers that she was going to start her own internet domain name escrow service and provide the service at a lower cost than Plaintiff. Defendant HILL falsely represented to the domain name customers that through her companies with co-defendants BOGUE

and HENDRICKSON and the backing of MCNAIR, her new company could provide the domain name internet escrow services legally, safely, securely and at a 20% lower cost than ESCROW.COM.

165.  HILL, BOGUE and HENDRICKSON planned to and are operating the internet escrow business out of their respective homes in Orange County, California and have used the internet, telephone and mail to conduct the services throughout the United States and the whole world.  The acts, representations, secrecy, and failure to disclose were done by or with the knowledge consent of each defendant and in accordance with and pursuant to a plan and in furtherance of a conspiracy.

166.  Because they are doing so without an internet escrow license to perform such service over the internet in California and without a money transmitters license as required in California they are doing so illegally.  Further, in addition they are not complying with California laws re: license standards of practice, bonding, financial reserves, accounting, training, audits, record keeping requirements or legal oversight from their business locale as a licensed internet escrow provider is required per California statute and regulation. The license application standards have strict requirements including but not limited to such things as having a person with knowledge and experience of accounting and Escrow Law and regulations on duty at each business location of the licensed internet escrow agent (Finance Code § 17200.8); bond requirements (Finance Code § 17202); and background and fingerprint identification (Finance Code § 17209).

167.  Although defendants claim on the ESCROW HILL website that they are licensed to perform internet escrow services under the laws of New Zealand, they are in fact performing the services from California and are doing so in disregard and in violation of the laws of this state as well as state and federal income tax rules and regulations.

168. All of the representations (and failure to disclose the illegality) were and are being made to induce the domain name customers to sever their business relationship with Plaintiff. Defendant's false representation, constituted an unfair trade practice in violation of Business and

Professions Code Section 17200. Pursuant to California Escrow Law: "It shall be *unlawful* for any person to engage in business as an escrow agent within this state except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." Finance Code § 17200

169.  Beginning on or about January 8, 2014, while in California, defendants announced to the domain name trading industry that defendants were going live and were accepting agreements to perform escrow services for domain name transactions over the internet. As a proximate result of defendant's conduct and the severance of contract negotiations by the third party domain name traders, Plaintiff has suffered damages in a sum according to proof but in no event less than 8,000,000.

170.  Plaintiff is informed and believes and thereon alleges that HILL is the Chief Executive Officer of ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN.  HILL and MCNAIR managed and controlled and had authority to bind ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN.  At the time of the making of the representations herein alleged and at all times herein mentioned, HILL and MCNAIR were acting within the course and scope of their employment and authority for ESCROW HILL, ESCROWHILL.COM and HILL LTD and HILL ADMIN and DOES 1 through 25 and approved and ratified the actions alleged herein.

171.  The actions of Defendants and each of them, as alleged herein have caused injury to Plaintiff, which constitutes a RICO violation under the terms of the act. 18 U.S.C. §§ 1962(c) et seq. 18 U.S.C. §1964(c) provides for liability in civil suits brought by any person injured 'in his business or property' by a RICO violation, with a compulsory award of treble damages, costs, and attorney fees.  Alternatively, the aforementioned acts of defendants, and each of them, were willful and fraudulent.  Plaintiff is therefore entitled to punitive damages.

///

///

///

///

COMPLAINT

## FOURTEENTH CAUSE OF ACTION

### FOR TEMPORARY RESTRAINING ORDER,

### PRELIMINARY AND PERMANENT INJUNCTION

### AGAINST DEFENDANTS  ESCROW HILL, HILL LTD, ESCROWHILL.COM,

### HILL ADMIN HILL, BOGUE, HENDRICKSON, MCNAIR and DOES 1 through 50

172.  Plaintiff refers to and re-alleges Paragraphs 1 through 171, inclusive, as if set forth at length herein.

173.  Beginning on or before November 21, 2013 and continuing to the present time, defendants, and each of HILL, BOGUE and HENDRICKSON, wrongfully and unlawfully operated an internet escrow company from their homes in Orange County California without being licensed or bonded in California and without complying with California's money transmitter statutes and regulations.  The acts, representations, secrecy, and failure to disclose were done by or with the knowledge consent of each defendant including defendants ESCROW HILL, HILL LTD, ESCROWHILL.COM, HILL ADMIN and MCNAIR in accordance with and pursuant to a plan and in furtherance of a conspiracy.

174.  By doing so defendants can offer the services at a lower cost and doing so invade upon, interfere and infringe upon Plaintiff's protectable rights and interests.

175.  Defendants are performing internet escrow services in California without a license and without complying with all required codes, statutes and regulations including but not limited to:

176.  Plaintiff is informed and believes and thereon alleges that defendant(s) performed the above-mentioned act(s) for the purpose of injuring Plaintiff and other competitors.

177.  Defendant(s) threatens/threaten to and unless restrained, will continue *the Unfair Practices Act,* continue to offer to sell and sell to purchasers the above-mentioned services below cost and not in compliance with California statutes and regulations.

178.  As a proximate result of the above-mentioned act(s) of defendant(s), Plaintiff has and will continue to suffer damages in that Plaintiff will be deprived of the patronage of a large number of its actual and potential customers.  Plaintiff has a personal or property right or interest of the kind that injunctive relief is available to protect, such as the ownership and possession the right to

COMPLAINT

conduct an established internet escrow business in compliance with California laws and regulations.

179. Defendants HILL, BOGUE and HENDRICKSON were former employees of Plaintiff and had access to Plaintiff's confidential and proprietary information including but not limited to customer lists and pricing schedules and methods as a licensed and bonded internet escrow provider.

180. Beginning on or about November 21, 2013 and continuing to the present time, defendants, and each of them, wrongfully and unlawfully operated an internet escrow company from their homes in Orange County California without being licensed or bonded in California and without complying with California's money transmitter statutes and regulations. By doing so defendants can offer the services at a lower cost and doing so invade upon, interfere and infringe upon Plaintiff's protectable rights and interests.

181. Plaintiff has demanded that defendants stop their wrongful conduct described above. Defendants, and each of them, have refused and still refuse to refrain from their conduct.

182. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff as the damages to Plaintiff's reputation and goodwill is not measurable.

183. Plaintiff further has no adequate remedy at law for the injuries currently being suffered and that are threatened as it will be impossible for Plaintiff to determine the precise amount of damage that it will suffer if defendants' conduct is not restrained and Plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for its injuries.

184. No adequate remedy exists at law for the injuries suffered by Plaintiff herein, insofar as further harm will result to Plaintiff from defendant's wrongful act of conversion absent injunctive relief. If this court does not grant injunctive relief of the type and for the purpose specified herein, Plaintiff will suffer irreparable injury. Therefore, Plaintiff requests the following injunctive relief: (a) an order enjoining defendants from providing internet escrow services in California without a license and bond: (b) an order enjoining defendants from providing internet escrow services in California without complying with California regulations and statutes as a money transmitter; (c) an order enjoining defendants from providing internet escrow services with any person or entity located in California without making a full disclosure on its website prior to the transaction a copy of this

COMPLAINT

court's restraining order. and (d) enjoining defendants from using telephone number 714-925-5731 for any business purpose.

185. As a proximate result of defendants' wrongful conduct, Plaintiff's has been damaged in a sum according to proof.  Plaintiff will be further damaged in like manner so long as defendants' conduct continues.

WHEREFORE, Plaintiff prays for judgment against defendant(s) as follows:

**AS TO THE FIRST CAUSE OF ACTION AGAINST HILL:**

1. General damages in a sum according to proof but in no event less than $1,000,000;

**AS TO THE SECOND CAUSE OF ACTION AGAINST BOGUE:**

2. General damages in a sum according to proof but in no event less than $1,000,000;

**AS TO THE THIRD CAUSE OF ACTION AGAINST HENDRICKSON:**

3. General damages in a sum according to proof but in no event less than $1,000,000;

**AS TO THE FOURTH CAUSE OF ACTION AGAINST HILL, BOGUE AND HENDRICKSON:**

4. General damages in a sum according to proof but in no event less than $1,000,000;

5. Punitive damages in an amount sufficient to punish and deter defendants;

**AS TO THE FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**

6. General damages in a sum according to proof but in no event less than $8,000,000;

7. Punitive damages in an amount sufficient to punish and deter defendants;

**AS TO THE SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**

8. General damages in a sum according to proof but in no event less than $8,000,000;

9. Punitive damages in an amount sufficient to punish and deter defendants;

**AS TO THE SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**

10. General damages in a sum according to proof but in no event less than $8,000,000;

11. Punitive damages in an amount sufficient to punish and deter defendants;

**AS TO THE EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**

12. General damages in a sum according to proof but in no event less than $8,000,000;

13. Punitive damages in an amount sufficient to punish and deter defendants;

**AS TO THE NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**

14.  General damages in a sum according to proof but in no event less than $8,000,000;

15.  Punitive damages in an amount sufficient to punish and deter defendants;

**AS TO THE TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**

16.  General damages in a sum according to proof but in no event less than $8,000,000;

17.  Treble damages in the amount of $24,000,000;

18.  For reasonable attorney fees per Business and Professions Code Section 17200 et seq;

19. Injunctive relief: (a) an order enjoining defendants from providing internet escrow services in California without a license and bond: (b) an order enjoining defendants from providing internet escrow services in California without complying with California regulations and statutes as a money transmitter: (c) enjoining defendants from providing internet escrow services with any person or entity without making a full disclosure on its website of this court's restraining order.

**AS TO THE ELEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**

20. General damages in a sum according to proof but in no event less than $8,000,000;

21.  Punitive damages in an amount sufficient to punish and deter defendants;

22.  Injunctive relief: (a) an order enjoining defendants from providing internet escrow services in California without a license and bond: (b) an order enjoining defendants from providing internet escrow services in California without complying with California regulations and statutes as a money transmitter; (c) an order enjoining defendants from providing internet escrow services with any person or entity without making a full disclosure on its website of this court's restraining order and (d) enjoining defendants from using telephone number 714-925-5731 for any business purpose

**AS TO THE TWELFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**

23.  General damages in a sum according to proof but in no event less than $8,000,000;

24.  Punitive damages in an amount sufficient to punish and deter defendants;

25.  Injunctive relief: (a) an order enjoining defendants from providing internet escrow services in California without a license and bond: (b) an order enjoining defendants from providing internet escrow services in California without complying with California regulations and statutes as a money transmitter; (c) an order enjoining defendants from providing internet escrow services with

COMPLAINT

any person or entity without making a full disclosure on its website of this court's restraining order and (d) enjoining defendants from using telephone number 714-925-5731 for any business purpose.

### AS TO THE THIRTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:

26. General damages in a sum according to proof but in no event less than $8,000,000;

27. Treble damages in the amount of $24,000,000 per RICO 18 U.S.C.§§ 1961 et seq;

28. Attorney fees per RICO 18 U.S.C.§§ 1961 et seq

### AS TO THE FOURTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:

29. For an order requiring defendants, and each of them, to show cause, if any they have, why they should not be enjoined as set forth below, during the pendency of this action;

30. For a temporary restraining order, a preliminary injunction, and a permanent injunction: (a) enjoining defendants from providing internet escrow services in California without a license and bond: (b) enjoining defendants from providing internet escrow services in California without complying with California regulations and statutes as a money transmitter;  (c) enjoining defendants from providing internet escrow services with any person or entity without making a full disclosure on its website of this court's restraining order; and (d) enjoining defendants from using telephone number 714-925-5731 for any business purpose.

### AS TO ALL CAUSES OF ACTION AGAINST ALL DEFENDANTS

31. For costs incurred; and

32. For any other and further relief as the court may deem proper.

ROBERT A.BONITO & ASSOCIATES

Dated: January 22, 2014          By: _____
                                        ROBERT A. BONITO, ESQ.

                                Attorneys for Plaintiff EC SERVICES CORPRATION

**EXHIBIT A**

*Andee Hill*

## EC SERVICES CORPORATION

## EMPLOYEE PROPRIETARY INFORMATION AGREEMENT

In consideration and as a condition of my employment, or continued employment, by EC SERVICES CORPORATION and/or by companies which it owns, controls, or is affiliated with, or their successors in business (hereafter referred to as "the Company"), and the compensation paid therefor:

1.    Confidentiality.

I agree to keep confidential, except as the Company may otherwise consent in writing, and not to disclose or make any use of except for the benefit of the Company, at any time, either during or subsequent to my employment, any trade secrets, confidential information, knowledge, data or other information of the Company relating to products, processes, know-how, designs, formulas, test data, customer lists, business plans, marketing plans and strategies, pricing strategies or other subject matter pertaining to any business of the Company or any of its clients, customers, consultants, licensees or affiliates, which I may produce, obtain or otherwise acquire during the course of my employment, except as herein provided. I further agree not to deliver, reproduce or in any way allow any such trade secrets, confidential information, knowledge, data or other information, or any documentation relating thereto, to be delivered or used by any third parties without specific direction or consent of a duly authorized representative of the Company.

2.    Conflicting Employment/Return of Confidential Material.

I agree that during my employment with the Company I will not engage in any other employment, occupation, consulting or other activity relating to the business in which the Company is now or may hereafter become engaged or which would otherwise conflict with my obligations to the Company. I agree to promptly notify the Company of any such other employment, occupation, consulting or other activity. I agree that the determination of the Company as to whether or not any such activity would conflict with my obligations to the Company will be final and binding on me. In the event of my termination of employment with the Company for any reason whatsoever, I agree to promptly, upon request by the Company, surrender and deliver to the Company all customer lists, records, materials, equipment, drawings, documents and data of any nature pertaining to any invention, trade secret or confidential information of the Company or to my employment, and I will not take with me, unless otherwise consented to in writing by the Company, any description containing or pertaining to any confidential information, knowledge or data of the Company which I may produce or obtain during the course of my employment. In the event of the termination of my employment for any reason whatsoever, I agree to sign and deliver the "Termination Certificate" attached hereto as Exhibit 1.

3.    Assignment of Inventions.

I agree that all computer programs, documentation and other copyrightable materials to which I contribute during my employment shall be considered "works made for hire" and shall be the sole property of the Company. I hereby assign and transfer to the Company my entire right, title and interest in and to all inventions (as used in this Agreement, "inventions" shall include but not be

*EXHIBIT "A"*

limited to ideas, improvements, designs and discoveries) whether or not patentable and whether or not reduced to practice, made or conceived by me (whether made solely by me or jointly with others) during the period of my employment with the Company, which relate in any manner to the actual or demonstrably anticipated business, work or research and development of the Company or its subsidiaries, or result from or are suggested by any task assigned to me or any work performed by me for or on behalf of the Company or its subsidiaries.

4.     Disclosure of Inventions and Patents.

I agree that in connection with any "invention" as defined in Paragraph 3 above:

(a)     I will disclose all material inventions promptly in writing to the Company, with a copy to the President in order to permit the Company to claim rights to which it may be entitled under this Agreement.  Such disclosure shall be received in confidence by the Company.

(b)     I will, at the Company's request, promptly execute a written assignment of title to the Company for any invention required to be assigned by Paragraph 3 ("assignable invention"), and I will preserve any such assignable invention as confidential information of the Company.

(c)     Upon request, I agree to assist the Company or its nominee (at its expense) during and at any time subsequent to my employment in every reasonable way to obtain for its own benefit patents and copyrights for such assignable inventions in any and all countries, which inventions shall be and remain the sole and exclusive property of the Company or its nominee whether or not patented or copyrighted.  I agree to execute such papers and perform such lawful acts as the Company deems to be necessary to allow it to exercise all right, title, and interest in such patents and copyrights.

5.     Execution of Documents.

In connection with Paragraph 4(c), I further agree to execute, acknowledge and deliver to the Company or its nominee upon request and at its expense all such documents, including applications for patents and copyrights and assignments of inventions, patents and copyrights to be issued therefore, as the Company may determine necessary or desirable to apply for and obtain letters, patents and copyrights on such assignable inventions in any and all countries and/or to protect the interest of the Company or its nominee in such inventions, patents and copyrights, and to vest title thereto in the Company or its nominee.

6.     Maintenance of Records.

I agree to keep and maintain adequate and current written records of all inventions made by me (in the form of notes, sketches, drawings and as may be specified by the Company), which records shall be available to and remain the sole property of the Company at all times.

7.     Prior Inventions.

It is understood that all inventions if any, patented or unpatented, which I made prior to my employment by the Company are excluded from the scope of this Agreement.  To preclude any possible uncertainty, I have set forth on Exhibit 2 attached hereto a complete list of all my prior inventions, including numbers of all patents and patent applications, and a brief description of all

DOCSOC/721248v2/16939.0000

2

unpatented inventions which are not the property of a previous employer. I represent and covenant that the list is complete. I agree to notify the Company in writing before I make any disclosure or perform any work on behalf of the Company which appears to threaten or conflict with proprietary rights I claim in any invention or idea. In the event of my failure to give such notice, I agree that I will make no claim against the Company with respect to any such inventions or ideas. In addition, if any invention made or conceived by me during the period of my employment is based on, or incorporates, or is an improvement or derivative of, or cannot reasonably be made, used, reproduced and distributed without violating other technology or rights owned by me, I hereby grant to the Company a perpetual, worldwide, royalty-free, non-exclusive, sublicensable right and license to exploit and exercise all such technology in support of the Company's exercise or exploitation of its rights to such invention.

8.    Non-Competition.

(a)    I agree that during my employment by the Company or by any Affiliate of the Company and for a period not to exceed one (1) year from the date of my termination from the Company, I will not engage or participate (whether as employee, employer, consultant, agent, principal, partner, owner, stockholder, lender, corporate officer, director or other representative capacity) in, or otherwise render assistance to, any business that competes with any of the businesses engaged in, or proposed to be engaged in, by the Company in any city or county within the United States in which the Company is then engaging and continues to engage in any of its businesses without the express written consent of the Company. In the event any court shall refuse to enforce any portion of the covenant in this Section 8, then such unenforceable portion shall be deemed eliminated and severed from said covenant for the purpose of said court's proceedings to the extent necessary to permit the remaining portions of this covenant to be enforced. Notwithstanding the foregoing, I agree that I may own up to 1% of the shares of any class of capital stock of any corporation that engages in any business that is competitive with the Company, provided that such class of capital stock is listed for trading on the New York Stock Exchange, the American Stock Exchange or The NASDAQ Stock Market and such shares are held for investment only.

(b)    As used in this Agreement, the term "Affiliate" (when used with reference to the Company) means any corporation, partnership, joint venture, association or other business entity (any of the foregoing, an "entity") or any person that controls, is controlled by, or is under common control with the Company. A person or entity shall be deemed to control another entity if such person or entity has the right or power, either directly or indirectly through its contrl of any other person or entity, either to select a majority of the directors, managers or trustees, or to veto any major business decisions, of such other entity.

9.    Non-Solicitation.

I agree that during my employment by the Company or by any Affiliate of the Company and for a period not to exceed one (1) year from the date of my termination from the Company, I shall refrain from soliciting and shall not, directly or indirectly, as sole proprietor, independent contractor, employee, consultant, agent, partner, or joint venturer, or as an officer, director, stockholder, agent or employee of any firm, person, entity, partnership or corporation, or otherwise: (i) solicit the employees of the Company to leave the service of the Company; or (ii) solicit the business of any person, firm, partnership, joint venture, sole proprietorship or other entity to whom or which the Company is rendering or has rendered services.

3

10.  Other Obligations.

I acknowledge that the Company from time to time may have agreements with other persons or with the U.S. Government or governments of other countries, or agencies thereof, which impose obligations or restrictions on the Company regarding inventions made during the course of work thereunder or regarding the confidential nature of such work. I agree to be bound by all such obligations and restrictions and to take all action necessary to discharge the obligations of the Company thereunder.

11.  Trade Secrets of Others.

I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me in confidence or in trust prior to my employment with the Company, and I will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others. I agree not to enter into any agreement either written or oral in conflict herewith.

12.  No Employment Contract Created. I acknowledge that this Agreement shall not be construed as granting to me any right with respect to continuance of employment by the Company.

13.  Modification.

This Agreement may not be changed, modified, released, discharged, abandoned or otherwise amended, in whole or in part, except by an instrument in writing, signed by me and the Company. I agree that any subsequent change or changes in my duties, salary, or compensation shall not affect the validity or scope of this Agreement.

14.  Entire Agreement.

I acknowledge receipt of this Agreement and agree that with respect to the subject matter thereof it is my entire agreement with the Company, superseding any previous oral or written communications, representations, understandings or agreements with the Company or any officers or representative thereof.

15.  Severability.

In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable in any jurisdiction, such paragraph or provision shall, as to that jurisdiction, be adjusted and reformed, if possible, in order to achieve the intent of the parties, and if such paragraph or provision cannot be adjusted and reformed, such paragraph or provision shall, for the purposes of that jurisdiction be voided and severed from this Agreement, and the entire Agreement shall not fail on account thereof but shall otherwise remain in full force and effect.

16.  Successors and Assigns.

This Agreement shall be binding upon my heirs, executors, administrators or other legal representative and is for the benefit of the Company, its successors and assigns.

17.   Governing Law.

This Agreement shall be governed by the laws of the location of the Company's corporate headquarters, which is presently located in the State of California; provided, however, that in the event this provision is deemed to be unenforceable by a local judicial authority or governmental agency, then the laws of the location of my employment shall apply. The proper venue for any litigation relating to, or arising out of, my employment shall be the county of Orange, State of California.

18.   Counterparts.

This Agreement may be signed in two counterparts, each shall be deemed an original and both of which shall together constitute one agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of ~~July~~ 17 2000.

EMPLOYEE:

ANDREA HILL

*Andrea Hill*

EC SERVICES CORPORATION

By: _____
Name: _____
Title: _____

6

**EXHIBIT 1**

**TERMINATION CERTIFICATE**

This is to certify that I do not have in my possession, nor have I failed to return any records, documents, data, specifications, drawings, blueprints, reproductions, sketches, notes, reports, proposals, or copies of them, or other documents or materials, equipment, or other property belonging to EC Services Corporation and/or companies which it owns, controls or is affiliated with, or their respective successors and assigns (hereafter referred to as "the Company").

I further certify that I have complied with and will continue to comply with all the terms of the Employee Proprietary Information Agreement signed by me with the Company, including the reporting of any inventions (as defined therein) conceived or made by me covered by the Agreement.

I further agree that in compliance with the Employee Proprietary and Confidential Information Agreement, I will preserve as confidential all trade secrets, confidential information, knowledge, data, or other information relating to products, processes, know-how, designs, formulas, test data, customer lists, or other subject matter pertaining to any business of the Company or any of its clients, customers, consultants, licensees or affiliates.

[Employee's Signature]

_____

[Print Name]

Date: _____

## EXHIBIT 2

### LIST OF PRIOR INVENTIONS

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|

**EXHIBIT B**

EXHIBIT A

## ASSIGNMENT OF INVENTIONS AND PATENTS

This Assignment of Inventions and Patents (the "Assignment") is made as of _____ 5-5 _____, 2008, by and between _____ Ryan Bogue _____ ("Employee") and Escrow.com ("Employer"). Employee was hired by Employer on _____ 5-5 _____, 2008, and as a condition to Employee's employment with Employer, Employee has agreed to enter into this Assignment intended to comply with the provisions of California Labor Code Section 2870.

### AGREEMENT

Employee understands that the term "Proprietary Information" in this Agreement means any and all information, ideas and materials, in whatever form, tangible or intangible, whether disclosed to or learned or developed by Employee, that is or has been used by Employer or that otherwise pertains in any manner to the past, present, planned or foreseeable business of Employer or any partner, vendor, customer, or other person or entity, including, but not limited to, any software, data, database, trade secret, know-how, knowledge, technique, process, financial information, customer information, pricing information or contract terms.

Often, Proprietary Information will be stamped or otherwise marked "Confidential," "Proprietary," or with some similar designation. If any information or material is not so marked however, and it meets the definition in Section (1)(a) above, it is still Proprietary Information. Employee understands that Proprietary Information does not include any information, idea or material that is or becomes publicly known through lawful means and without breach of this Agreement by Employee. Any information, idea or material will not be considered to be publicly known or in the public domain merely because it is embraced by more general information in my prior possession or the possession of others, or merely because it is expressed in public literature in general terms.

Employee acknowledges that all information generated, received or maintained by or for Employee on the premises or equipment of Employer (including, without limitation, computer systems and electronic or voice mail systems) is Proprietary Information and the sole property of Employer, and Employee hereby waives any property or privacy rights Employee may have with respect to such information.

Employee agrees that any inventions made by Employee, solely or jointly with others, during the term of this contract, that are made with Employer's equipment, supplies, facilities, trade secrets, or time; or that relate, at the time of conception or of reduction to practice, to the business of Employer or Employer's actual or demonstrably anticipated research or development; or that result from any work performed by Employee for Employer, shall belong to Employer, and promises to assign the rights to all such inventions to Employer.

For purposes of this agreement, "inventions" includes anything that may be patentable or copyrightable, as well as any discovery, development, design, formula, improvement, invention, software program, process, technique, trade secret, and any other form of information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure, whether or not registrable or protectable under patent laws, copyright laws, or other laws. The "rights" to any such invention include patents, copyrights, trademarks, service marks, and any other proprietary rights associated with the invention.

Employee also agrees that Employer shall have the right to keep any such inventions as trade secrets, if Employer chooses.

Employee agrees to assign to Employer all rights in any other inventions if Employer is required to grant those rights to the United States Government or any agency thereof.

EXHIBIT "B"

This Section shall not apply to assign to Employer any of Employee's rights in any invention that Employee develops entirely on his or her own time without using Employer's equipment, supplies, facilities, or trade secret information, except for inventions that either (1) relate, at the time that the invention is conceived or reduced to practice, to Employer's business or to actual or demonstrably anticipated research or development of Employer; or (2) result from any work performed by Employee for Employer.

In order to permit Employer to claim rights to which it may be entitled, Employee agrees to disclose to Employer in confidence all inventions that Employee makes during the course of his or her employment and all patent applications filed by Employee within a year after termination of his or her employment.

Employee shall assist Employer in obtaining and enforcing patents and copyrights on all inventions, in the United States and in all foreign countries, and shall execute all documents and do all things necessary to obtain letters patent or copyright protection, to vest Employer with full and extensive titles thereto, and to protect the same against infringement by others. Employee's obligation to assist Employer in obtaining and enforcing such rights will continue after the termination of Employee's employment, and for such assistance rendered after the termination of employment Employer will compensate Employee at the current rate per hour as of the termination date for time actually spent by Employee at Employer's request.

For the purposes of this agreement, an invention is deemed to have been made during the period of Employee's employment if the invention was conceived or first actually reduced to practice during that period, and Employee agrees that any patent application filed within a year after termination of his or her employment hereunder shall be presumed to relate to an invention made during the term of Employee's employment unless Employee can provide evidence to the contrary.

IN WITNESS WHEREOF, this Assignment has been entered into by Employer and Employee as of the date first written above.

EMPLOYEE

*Ryan Bogue*

Escrow.com

By: _____

Its: _____

2

**EXHIBIT C**

EXHIBIT A

## ASSIGNMENT OF INVENTIONS AND PATENTS

This Assignment of Inventions and Patents (the "Assignment") is made as of ~~Jan 7 2010~~ , 2006; by and between ~~Donald Hendrickson~~ ("Employee") and Escrow.com ("Employer"). Employee was hired by Employer on ~~Jan 4 2010~~ 2006, and as a condition to Employee's employment with Employer, Employee has agreed to enter into this Assignment intended to comply with the provisions of California Labor Code Section 2870.

AGREEMENT

Employee understands that the term "Proprietary Information" in this Agreement means any and all information, ideas and materials, in whatever form, tangible or intangible, whether disclosed to or learned or developed by Employee, that is or has been used by Employer or that otherwise pertains in any manner to the past, present, planned or foreseeable business of Employer or any partner, vendor, customer, or other person or entity, including, but not limited to, any software, data, database, trade secret, know-how, knowledge, technique, process, financial information, customer information, pricing information or contract terms.

Often, Proprietary Information will be stamped or otherwise marked "Confidential," "Proprietary," or with some similar designation. If any information or material is not so marked however, and it meets the definition in Section (1)(a) above, it is still Proprietary Information. Employee understands that Proprietary Information does not include any information, idea or material that is or becomes publicly known through lawful means and without breach of this Agreement by Employee. Any information, idea or material will not be considered to be publicly known or in the public domain merely because it is embraced by more general information in my prior possession or the possession of others, or merely because it is expressed in public literature in general terms.

Employee acknowledges that all information generated, received or maintained by or for Employee on the premises or equipment of Employer (including, without limitation, computer systems and electronic or voice mail systems) is Proprietary Information and the sole property of Employer, and Employee hereby waives any property or privacy rights Employee may have with respect to such information.

Employee agrees that any inventions made by Employee, solely or jointly with others, during the term of this contract, that are made with Employer's equipment, supplies, facilities, trade secrets, or time; or that relate, at the time of conception or of reduction to practice, to the business of Employer or Employer's actual or demonstrably anticipated research or development; or that result from any work performed by Employee for Employer, shall belong to Employer, and promises to assign the rights to all such inventions to Employer.

For purposes of this agreement, "inventions" includes anything that may be patentable or copyrightable, as well as any discovery, development, design, formula, improvement, invention, software program, process, technique, trade secret, and any other form of information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure, whether or not registrable or protectable under patent laws, copyright laws, or other laws. The "rights" to any such invention include patents, copyrights, trademarks, service marks, and any other proprietary rights associated with the invention.

Employee also agrees that Employer shall have the right to keep any such inventions as trade secrets, if Employer chooses.

Employee agrees to assign to Employer all rights in any other inventions if Employer is required to grant those rights to the United States Government or any agency thereof.

EXHIBIT "C"

This Section shall not apply to assign to Employer any of Employee's rights in any invention that Employee develops entirely on his or her own time without using Employer's equipment, supplies, facilities, or trade secret information, except for inventions that either (1) relate, at the time that the invention is conceived or reduced to practice, to Employer's business or to actual or demonstrably anticipated research or development of Employer; or (2) result from any work performed by Employee for Employer.

In order to permit Employer to claim rights to which it may be entitled, Employee agrees to disclose to Employer in confidence all inventions that Employee makes during the course of his or her employment and all patent applications filed by Employee within a year after termination of his or her employment.

Employee shall assist Employer in obtaining and enforcing patents and copyrights on all inventions, in the United States and in all foreign countries, and shall execute all documents and do all things necessary to obtain letters patent or copyright protection, to vest Employer with full and extensive titles thereto, and to protect the same against infringement by others. Employee's obligation to assist Employer in obtaining and enforcing such rights will continue after the termination of Employee's employment, and for such assistance rendered after the termination of employment Employer will compensate Employee at the current rate per hour as of the termination date for time actually spent by Employee at Employer's request.

For the purposes of this agreement, an invention is deemed to have been made during the period of Employee's employment if the invention was conceived or first actually reduced to practice during that period, and Employee agrees that any patent application filed within a year after termination of his or her employment hereunder shall be presumed to relate to an invention made during the term of Employee's employment unless Employee can provide evidence to the contrary.

IN WITNESS WHEREOF, this Assignment has been entered into by Employer and Employee as of the date first written above.

EMPLOYEE

_____

Escrow.com

_____

By:   _____

Its:   _____

2

# Exhibit B

# ADMINISTRATIVE SERVICES LLC

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 12/18/2012 |
| Type: | Domestic Limited-Liability Company | Entity Number: | E0645182012-7 |
| Qualifying State: | NV | List of Officers Due: | 12/31/2014 |
| Managed By: | Managers | Expiration Date: | |
| NV Business ID: | NV20121750266 | Business License Exp: | 12/31/2014 |

## Additional Information

| | |
|---|---|
| Central Index Key: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | PROFESSIONAL BUSINESS SOLUTIONS LLC | Address 1: | 3180 S DURANGO DR STE A4 |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89117 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Commercial Registered Agent - Limited-Liability Corporation | | |
| Jurisdiction: | NEVADA | Status: | Active |

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

**No stock records found for this company**

## Officers

☐ Include Inactive Officers

**Manager - ILAN BENYAACOV**

| | | | |
|---|---|---|---|
| Address 1: | 7917 RAMBLEWOOD AVENUE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89128 | Country: | USA |
| Status: | Active | Email: | |

## Actions\Amendments

| | | | |
|---|---|---|---|
| Action Type: | Articles of Organization | | |
| Document Number: | 20120846817-69 | # of Pages: | 1 |
| File Date: | 12/18/2012 | Effective Date: | |

**(No notes for this action)**

| | |
|---|---|
| Action Type: | Initial List |

| Document Number: | 20120846818-70 | # of Pages: | 1 |
| File Date: | 12/18/2012 | Effective Date: | |
| **(No notes for this action)** | | | |
| Action Type: | **Amended List** | | |
| Document Number: | 20130007940-06 | # of Pages: | 1 |
| File Date: | 1/7/2013 | Effective Date: | |
| **(No notes for this action)** | | | |
| Action Type: | **Annual List** | | |
| Document Number: | 20130854275-97 | # of Pages: | 1 |
| File Date: | 12/30/2013 | Effective Date: | |
| **(No notes for this action)** | | | |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

EC SERVICES CORPORATION, a California corporation doing business as Escrow.com

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Andrea Hill a/k/a Andee Hill, Ryan Bogue, Donald Hendrickson, Escrow Hill, Escrowhill.com, Escrow Hill, Limited, Administrative Services, LLC, Gregg McNair, Does 1-100

**(b)** County of Residence of First Listed Plaintiff   Orange County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Robert A. Bonito, Robert A. Bonito & Associates, P.O. Box 750, Orange, CA 92856-6750, telephone (714) 997-2221

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Derek Newman, Newman Du Wors LLP, 100 Wilshire Boulevard, Suite 940, Santa Monica, CA 90401, telephone (310) 359-8200

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding    ☒ 2. Removed from State Court    ☐ 3. Remanded from Appellate Court    ☐ 4. Reinstated or Reopened    ☐ 5. Transferred from Another District (Specify)    ☐ 6. Multi-District Litigation

"BY FAX"

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 1441(a); removal of federal claim under 18 U.S.C. § 1964(c)

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☒ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   **SACV14-00243 RNB**

CV-71 (11/13)    CIVIL COVER SHEET    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [x] Yes [ ] No | [ ] Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [x] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| [ ] Yes [x] No | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Los Angeles | [ ] Los Angeles | Western |
| | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [x] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [x] | [ ] | [ ] | [ ] |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| [x] 2 or more answers in Column C | [ ] 2 or more answers in Column D |
| [ ] only 1 answer in Column C and no answers in Column D | [ ] only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. |
| If none applies, answer question C2 to the right. ➡ | If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Southern |

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed in **this court** that are related to the present case?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____ DATE: 2/19/14

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |